**HAITIAN REFUGEE CENTER, an unincorporated, not for profit organization, Plaintiffs-Appellees,**

v.

**Edwin MEESE, III \*, Attorney General of the United States, et al., Defendants-Appellants.**

No. 84–5679.

United States Court of Appeals, Eleventh Circuit.

June 24, 1986.

\* The name of the Attorney General has been changed. It was formerly William French Smith.

Leon Kellner, U.S. Atty., Miami, Fla., William Kanter, Appellate Staff, Civil Div., Dept. of Justice, Michael Jay Singer, Washington, D.C., for defendants-appellants.

Thomas R. Kline, Brown, Roady, Bonvillian & Gold, Chartered, Mary D. Dick, Washington, D.C., Ira Kurzban, Miami, Fla., for plaintiffs-appellees.

Before CLARK, Circuit Judge, HENDERSON **, Senior Circuit Judge, and HOFFMAN ***, Senior District Judge.

WALTER E. HOFFMAN, Senior District Judge:

■ This is an appeal from an interim award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1982) (EAJA). EAJA was amended, effective August 5, 1985, with the passage of Public Law 99–80. Section 7 of that law provides:

(a) In General.—Except as otherwise provided in this section the amendments made by this Act shall apply to cases pending on or commenced on or after the date of the enactment of this Act.

(b) Applicability of Amendments to Certain Prior Cases.—The amendments made by this Act shall apply to any case commenced on or after October 1, 1984, and finally disposed of before the date of the enactment of this Act, except that in any such case, the 30-day period referred to in section 504(a)(2) of Title 5, United States Code, or section 2412(d)(1)(B) of Title 28, United States Code, as the case may be, shall be deemed to commence on the date of the enactment of this Act.

Paragraph (a) clearly applies to the present case, which has been pending since 1979. Paragraph (b) applies to those cases which were initiated after the sunset provision of the original EAJA took effect on September 30, 1984, and before the amendments were enacted. Consequently Paragraph (b) has no relevance to the case before this court.

On May 9, 1979, the Haitian Refugee Center and eight individual Haitians brought a class action on behalf of over 4,000 Haitians who had petitioned for political asylum in this country. The suit challenged the legality of the "Haitian Program." This program was instituted by the Immigration and Naturalization Service (INS) in the summer of 1978 to accelerate the processing of the applications made by Haitians for asylum. After a non-jury trial, the district court, in a lengthy opinion dated July 2, 1980, found for the plaintiffs. *Haitian Refugee Center v. Civiletti*, 503 F.Supp. 442 (S.D.Fla.1980) (hereinafter Haitian I).

---

** *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

*** Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

The district court ordered the government to submit a plan for reprocessing the applications for asylum to the court for its approval. The district court also enjoined further deportation proceedings against class members until the reprocessing plan had been approved by the court. The government then filed a Motion to Enter Judgment pursuant to Fed.R.Civ.P. 58. The district court denied the government's motion on August 11, 1980, ruling that its July 2, 1980, order was "far from final." The government then filed its Notice of Appeal on August 27, 1980, and subsequently submitted its reprocessing plan to the district court on December 24, 1980.

On appeal, this court[1] affirmed the district court's decision with some modifications on May 24, 1982. *Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir. Unit B 1982) (hereinafter Haitian II), and our mandate was issued on July 28, 1982.

After the appeal, between August 18, 1982, and March 1, 1983, the plaintiffs filed applications for attorneys' fees pursuant to EAJA. The matter was referred to a U.S. Magistrate, who recommended that attorneys' fees and costs should be allowed in the amount of $221,873.86. The district court adopted the Magistrate's report with some modifications and awarded a total of $441,094.98. The government appeals this award on a number of grounds.

*Appealability*

Before reaching the merits of the case, it is necessary to determine whether the district court's order awarding attorneys' fees is an appealable order. The Court raised this issue *sua sponte* during oral argument, and the parties have submitted supplementary briefs on the issue.

This appeal was taken under 28 U.S.C. § 1291, which provides that courts of appeal have "jurisdiction of appeals from all final decisions of the district courts" of the United States. 28 U.S.C. § 1291. The difficulty arises in this case because the district court has yet to enter a final judgment. Therefore, the question becomes whether the award of attorneys' fees in this case is a "final decision" within the meaning of § 1291.

The Supreme Court has stated that this provision in the statute should be given a practical, rather than technical, construction. *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). The Supreme Court has stated that the "effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete ... So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal ... Nor does the statute permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge." *Id.* at 546, 69 S.Ct. at 1225.

In the *Cohen* case, the plaintiff brought a stockholder's derivative action as a diversity suit in the federal court. The district court refused to order the plaintiff to post security for the costs of the litigation as required by state statute. The Supreme Court ruled that the decision was appealable because it fell into that small class of decisions "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225–26.

■ A decision "final" within the meaning of § 1291 does not necessarily mean the last order that could possibly be made in the case. *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964). In "deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" *Id.* at 152–53, 85 S.Ct. at 311 (quoting *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950)).

---

**1.** At the time of the appeal this court was still part of the former Fifth Circuit.

The Court further stated in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), that to "come within the 'small class' of decisions excepted from the final judgment rule by *Cohen*, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Id.* at 468, 98 S.Ct. at 2458.

■ It is clearly evident that the district court's order awarding attorneys' fees is appealable under *Cohen* and its progeny. The court's award finally disposes of the issue of attorneys' fees for litigating the case until this point. Whether the plaintiffs are entitled to an award of attorneys' fees under the EAJA is separate and collateral to the litigation on the merits. This court has implicitly ruled that such orders are appealable in *Jonas v. Stack*, 758 F.2d 567 (11th Cir.1985). Therefore, we hold that the district court's order awarding attorneys' fees is a final decision and is appealable under *Cohen*.

*Timeliness*

The government contends that the applications for attorneys' fees were untimely filed and therefore should be denied. The EAJA provides, in pertinent part:

A party seeking an award of fees and other expenses shall, within 30 days of final judgment in the action, submit to the court an application for fees and other expenses.

28 U.S.C. § 2412(d)(1)(B).

■ The EAJA is a waiver of sovereign immunity, and as such it must be strictly construed. *Action on Smoking and Health v. Civil Aeronautics Board*, 724 F.2d 211, 225 (D.C.Cir.1984). The condition that the applications for attorneys' fees must be filed within 30 days of the final judgment in the action is jurisdictional. *Id.* at 225; *Clifton v. Heckler*, 755 F.2d 1138, 1144 (5th Cir.1985). "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court

define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted). Therefore, if the applications were untimely filed, the district court lacked jurisdiction to award any attorneys' fees.

The government contends that this court's decision in *Haitian I* was the "final judgment" within the meaning of the EAJA. That decision was issued on May 24, 1982, with our mandate not being issued until July 21, 1982. The first application was not filed until August 18, 1982. Therefore, according to the government, the applications were untimely filed because they were filed more than thirty days after May 24, 1982.

Courts interpreting the language of the original EAJA are divided regarding the initiation of the 30-day time period. Some courts have held that it begins when the district court enters its final judgment order. *See McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir.1983); *Paskel v. Heckler*, 581 F.Supp. 15 (E.D.Pa.1984), but other courts have held that the 30 days begin to run only once the time for any appeal has expired. *See Russell v. National Mediation Board*, 775 F.2d 1284 (5th Cir.1985); *McDonald v. Schweiker*, 726 F.2d 311 (7th Cir.1983); *Taylor v. United States*, 749 F.2d 171, 174 (3d Cir.1984); *Rawlins v. United States*, 686 F.2d 903, 914, 210 Ct.Cl. 672, 231 Ct.Cl. 313 (1982); *Keasler v. United States*, 585 F.Supp. 825 (E.D.Ark.1984) *aff'd* 766 F.2d 1227 (8th Cir.1985); *American Academy of Pediatrics v. Heckler*, 580 F.Supp. 436 (D.D.C.1984), *vacated in part*, 594 F.Supp. 69 (D.D.C.1984). However, our research has not found any court which has held that the decision of the appellate court on an interlocutory appeal is the "final judgment" specified in the EAJA.

The government relies upon *Gold Kist Inc. v. United States Department of Agriculture*, 741 F.2d 344 (11th Cir.1984). In *Gold Kist*, the plaintiff lost in the district court, and on appeal, we reversed. The plaintiff, on its appeal, also applied for

attorneys' fees under the EAJA. We held that the 30 days for filing an application for attorneys' fees would begin to run when the district court entered an order making the judgment of this court the order of the district court. *Id.* at 349–50. In so ruling, we stated that "[a]t least two circuit courts have construed 'final judgment' to mean final judgment in the district court. While we agree with this construction when the non-government party prevails below, to require a losing party below to file such an application would be senseless. No other circuit court has yet considered the issue in this context. We conclude that when the non-government party loses in district court but prevails on appeal, it must file its application for fees under the EAJA within 30 days of the judgment of the appellate court." *Id.* at 349 (citations omitted).

*Gold Kist* is inapplicable to the case at bar. Unlike *Gold Kist*, the non-government parties in this case have prevailed in the district court. This case is more analogous to *Guthrie v. Schweiker,* 718 F.2d 104 (4th Cir.1983). In *Guthrie*, the plaintiff sought attorneys' fees under the EAJA for successfully challenging the Secretary's denial of Social Security disability benefits. The district court remanded the case for a second time to the Secretary for the taking of additional evidence. On remand, the Secretary rendered a favorable decision for the plaintiff. The plaintiff filed copies of the ALJ's decision and the Secretary's final decision, moved for affirmance of the decision, and filed an application for fees under the EAJA. The district court held that the application was untimely and therefore denied the request for fees.

The Fourth Circuit reversed, holding that the order remanding the case to the Secretary was not final. The court stated, "The phrase 'final judgment' as used in the EAJA had the same meaning as in Fed.R. Civ.P. 54 which defines judgment as 'a decree and any order from which an appeal lies.' " *Id.* at 106.

In the case at bar, the district court has never entered a final judgment. The district court specifically denied the government's motion for entry of a final judgment under Fed.R.Civ.P. 58. The appeal to this court in *Haitian II* was brought by the government under 28 U.S.C. § 1292(a) as an appeal from an interlocutory order granting an injunction. In fact, the district court has still not entered a final judgment to this day.[2] Therefore, it is impossible for the 30-day time limit to have run since it has not yet begun. *Gold Kist* addressed only those occasions on which the non-government party loses in the district court but wins on appeal. When Congress amended EAJA, effective August 5, 1985, the Committee on the Judiciary explained that it adopted the interpretation of those courts which have held that final judgment occurs when the time to appeal has run.[3] Consequently, since the district court has not entered final judgment, since the thirty-day limit has not begun, and since the time to appeal has not run, the application for attorneys' fees was timely filed.

Additionally, the legislative history of the EAJA amendments states that fee petitions may be filed before a final judgment.[4] The EAJA, as amended, thus follows the trend of decisions under other fee statutes which permit interim fee awards in appropriate circumstances. *See Gaines v. Dougherty County Board of Education,* 775 F.2d 1565 (11th Cir.1985);

2. The government submitted its proposed reprocessing plan on December 24, 1980, but the district court has failed to act on it as yet. It is apparent from the supplemental briefs filed with this court that neither the plaintiffs nor the government is interested in bringing an end to this case anytime in the near future. The district court, however, should not permit this case to remain on its docket indefinitely. The district court should enter its final judgment disposing of this case or dismiss it for failure to prosecute.

3. House Judiciary Committee, H.R.Rep. No. 99–120, 99th Cong., 1st Sess., 7, *reprinted in* 1985 *U.S.Code Cong. & Ad. News,* 132, 135 (hereinafter cited as H.R.Rep. No. 99–120).

4. H.R.Rep. No. 99–120, 18 n. 26, U.S.Code Cong. & Admin.News 1985, p. 146.

*Jonas,* 758 F.2d at 567. In this case the plaintiffs have prevailed on the issue of enjoining the Haitian Program as conducted by the INS. Since this issue is central to the case, plaintiffs are entitled to an interim fee award.

### Substantial Justification

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

 It is the government's contention that the district court erred in awarding any attorneys' fees because its position was "substantially justified." In reviewing the district court's award under the EAJA, we may overturn the award only if the district court abused its discretion. *National Treasury Employees Union v. Internal Revenue Service,* 735 F.2d 1277, 1278 (11th Cir.1984); *White v. United States,* 740 F.2d 836, 839 (11th Cir.1984); *Ashburn v. United States,* 740 F.2d 843, 846 (11th Cir.1984); *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1486 (10th Cir.1984), *cert. denied sub nom, Jarboe-Lackey Feedlots, Inc. v. U.S.,* — U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984); *Matthews v. United States,* 713 F.2d 677, 682 (11th Cir.1983); *Spencer v. NLRB,* 712 F.2d 539, 565 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457

(1984); *Hoang Ha v. Schweiker,* 707 F.2d 1104, 1105 (9th Cir.1983); *Knights of the Ku Klux Klan Realm of Louisiana v. East Baton Rouge Parish School Board,* 679 F.2d 64, 68-69 (5th Cir. Unit A 1982). This standard of review requires a highly deferential review of district courts' findings of fact but allows for close scrutiny of district courts' rulings on questions of law. *Spencer,* 712 F.2d at 565.

██ The government bears the burden of showing that its position was substantially justified. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10 (1980), U.S.Code Cong. & Admin.News 1980 p. 4953; S.Rep. No. 253, 96th Cong., 1st Sess. 6 (1979); *Miller v. United States,* 753 F.2d 270 (3d Cir.1985); *Devine v. Sutermeister,* 733 F.2d 892, 894 (Fed.Cir.1984); *White,* 740 F.2d at 836; *Enerhaul Inc. v. NLRB,* 710 F.2d 748, 750 (11th Cir.1983); *S & H Riggers & Erectors, Inc. v. OSHRC,* 672 F.2d 426, 430 (5th Cir. Unit B 1982). The " 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based...." [5] Because the term "position of the United States" was not explicitly defined under prior law, courts differed in their holdings regarding the proper definition.[6] In clarifying the term, the Judiciary Committee expressly rejected the holding in *Spencer* that the only government position to be scrutinized in the context of an EAJA case is that taken in litigation itself.[7] The clarified definition of "position of the United States" has recently been applied in this and other circuits. *Russell v. Nation-*

---

**5.** Equal Access to Justice Act Amendments, Pub.L. No. 99–80, 99 Stat. 183, 28 U.S.C. § 2412-(d)(2)(D)(1985).

**6.** Some courts had held that the "position of the United States" referred to the government's litigation position, not the underlying action by the agency. *Ashburn,* 740 F.2d at 849; *Boudin v. Thomas,* 732 F.2d 1107, 1115 (2d Cir.1984); *White,* 740 F.2d at 842; *Devine,* 733 F.2d at 894; *Morris Mechanical Enterprises Inc. v. United States,* 728 F.2d 497, 498 (Fed.Cir.1984); *Boned Beef,* 726 F.2d at 1487; *Environmental Defense Fund Inc. v. EPA,* 716 F.2d 915, 920 (D.C.Cir.

1983); *Spencer,* 712 F.2d at 557; *Ellis v. United States,* 711 F.2d 1571, 1575 (Fed.Cir.1983); *Tyler Business Service Inc. v. NLRB,* 695 F.2d 73, 75 (4th Cir.1982); *Broad Avenue Laundry & Tailoring v. United States,* 693 F.2d 1387, 1390 (Fed. Cir.1982). Other courts had already adopted the position now clearly stated in EAJA. *Miller,* 753 F.2d at 274; *Rawlings v. Heckler,* 725 F.2d 1192 (9th Cir.1984); *NRDC v. USEPA,* 703 F.2d 700, 703 (3d Cir.1983).

**7.** H.R.Rep. No. 99–120, 12, U.S.Code Cong. & Admin.News 1985, p. 140.

*al Mediation Board,* 775 F.2d 1284 (5th Cir.1985); *United States v. Yoffe,* 775 F.2d 447 (11th Cir.1985).[8]

■■■ The standard for substantial justification is one of reasonableness. The government must show "that its case had a reasonable basis both in law and fact." H.R.Rep. No. 1418 at 10, U.S.Code Cong. & Admin.News 1980 at 4989; S.Rep. No. 253 at 6; *Ashburn,* 740 F.2d at 850; *White,* 740 F.2d at 839; *Miller,* 753 F.2d at 274; *Morris,* 728 F.2d at 499; *Wolverton v. Heckler,* 726 F.2d 580, 583 (9th Cir.1984); *McDonald,* 726 F.2d at 316; *Matthews v. United States,* 713 F.2d at 683; *S & H Riggers,* 672 F.2d at 430; *KKK,* 679 F.2d at 68. Because Congress in 1980 rejected a standard of "reasonably justified" and selected "substantially justified," the test is actually more than mere reasonableness. *Spencer,* 712 F.2d at 557; *Enerhaul,* 170 F.2d at 148; *Ulrich v. Schweiker,* 548 F.Supp. 63, 65 (D.Idaho 1982); *Nunes-Correia v. Haig,* 543 F.Supp. 812, 817 (D.D.C.Cir.1982); *Wolverton v. Schweiker,* 533 F.Supp. 420, 422, 424 (D.Idaho 1982).

The Court of Appeals for the District of Columbia Circuit has identified the following three factors which, although not exhaustive, are helpful to keep in mind in evaluating the reasonableness of the government's position:

1) clarity of the governing law;

2) foreseeable length and complexity of the litigation;

3) consistency of the government's position.

*Spencer,* 712 F.2d at 559–60. The present case was obviously long and complex, and the government could easily foresee that it would be. The clarity of the governing law varied considerably from issue to issue as did the consistency of the government's position. On some issues, the government was very consistent. On others, however, the government was quite fickle.

During the course of the litigation, the government contested numerous issues including mootness, ripeness, justiciability, exhaustion of administrative remedies, standing, jurisdiction, due process, equal protection, political question, and the burden of proof. The government now contends that its position was substantially justified in pressing its jurisdiction, exhaustion of administrative remedies, due process and equal protection arguments. The government also contends that its objections were reasonable in regard to the district court's fact finding on the conditions in Haiti and the court's shifting the burden from the asylum applicant to the INS. The government has therefore apparently conceded that its position as to the other issues it contested during the course of the litigation were unreasonable. We will therefore confine our examination to only those issues on which the government still contends it was substantially justified.

*Jurisdiction Issue*

■■ The government based its jurisdiction argument on the Immigration and Nationality Act, 8 U.S.C. § 1105a (1976) (INA). Under section 106(a) of the INA the courts of appeal are vested with exclusive jurisdiction to review "all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under 1252(b) [deportation hearings]...." 8 U.S.C. § 1105a(a). In short, the government argued that, as to Counts One through Three of the 16 counts in the complaint, the district court lacked jurisdiction since the INA vested exclusive jurisdiction in the courts of appeal for judicial review of all final orders of deportation. The complaint alleged the following fourteen counts of specific deficiencies in the INS procedures: 1) failure of immigration

---

**8.** Although this Court has also recently relied on the definition of "position of the United States" which includes only the government's litigation position, the opinion does not mention the August 5, 1985 amendments to the EAJA. This reliance on the original EAJA is clearly attribut-able to the fact that the last briefs were filed before the amendments to the EAJA were enacted by the Congress. *Porter v. Heckler,* 780 F.2d 920 (11th Cir.1986). Consequently, we do not consider *Porter* to be a binding precedent upon this Court.

judges to suspend deportation hearings upon the alien's assertion of a claim for asylum; 2) the establishment by immigration judges of arbitrary time limits within which an asylum application had to be filed; 3) mass scheduling of deportation hearings and asylum interviews; 4) conduct of asylum interviews in an arbitrary and oppressive manner; 5) failure of INS to maintain a verbatim record of asylum interviews; 6) failure to maintain prior asylum decisions for public inspection; 7) failure to allow inspection of the record of asylum proceedings and of non-record material upon which the defendants relied in making asylum determinations; 8) arbitrary and erroneous classification of all asylum claims as clearly lacking in substance; 9) issuance of form letter denials which contained no statement of the grounds for denial of asylum; 10) failure to forward all evidence supportive of the asylum claim to the State Department for its evaluation; 11) failure of the State Department to evaluate asylum claims fairly; 12) taking of statements from the plaintiffs without advising them of their right to remain silent and of the possible use of these statements against them in subsequent asylum and deportation hearings; 13) refusal of INS to allow HRC to inform asylum applicants of the availability of free legal services; and 14) incarceration or official intimidation of plaintiffs who exercised their fifth amendment right against self-incrimination.

The complaint, in Counts 15 and 16, made the following general allegations of violations of the equal protection and due process guarantee of the Constitution: 15) discrimination based on national origin; and 16) denial of fundamental fairness. The district court and this court rejected the government's argument on the ground that the suit was not challenging any particular order of deportation. It was, instead, challenging the entire process as applied to a class of over 4,000 people. In so holding we emphasized the factual uniqueness and the narrowness of our holding. *Haitian II*, 676 F.2d at 1032–33.

The government relied upon language in three Supreme Court cases. As we stated in *Haitian II*, the Supreme Court's analysis broadly suggested "that any attack *upon the proceeding* in which a deportation order was entered or any matter 'intimately and immediately associated' with the final order or '*governed by the regulations applicable to the deportation proceeding* itself, and . . . ordinarily presented to the special inquiry officer who entered the deportation order would fall within the court of appeals' exclusive jurisdiction under section 106(a)" *Haitian II*, 676 F.2d at 1032–33 (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 217, 88 S.Ct. 1970, 1976–77, 20 L.Ed.2d 1037 (1968)).

We further stated that "it is arguable that Count One (failure to suspend the deportation hearing) is reviewable only in the court of appeals. The ruling at issue was made by the immigration judge during the course of the deportation hearing, was a matter governed by INS Operations Instructions, and presumably would be reviewable by the Board of Immigration Appeals (BIA) upon appeal of the deportation order itself. Whether counts two and three allege actions within section 106(a) jurisdiction is even more ambiguous." *Haitian II*, 676 F.2d at 1033. It is clear that the government's position was reasonable on this issue and, therefore, substantially justified.

*Exhaustion*

 The government also advanced a similar argument as to the other counts in the complaint. It contended that the plaintiffs should have exhausted their administrative remedies before bringing suit. The general rule that parties are required to exhaust their administrative remedies before seeking judicial review is not a jurisdictional requirement but, instead, a matter committed to the discretion of the court. *Haitian II*, 676 F.2d at 1034. *See also NLRB v. Industrial Union of Marine and Shipbuilding Workers*, 391 U.S. 418, 419, 426 n. 8, 88 S.Ct. 1717, 1719, 1723 n. 8, 20 L.Ed.2d 706 (1968); *Ecology Center of Louisiana Inc. v. Coleman*, 515 F.2d 860, 865–66 (5th Cir.1975). The plaintiffs in the

case *sub judice* were not seeking review of any individual proceeding. Instead they were challenging the entire procedure used by the INS to process asylum applications.

▇▇▇ The Supreme Court has stated that it is "unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context." *Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976). We characterized it as equally "naive" to believe that the INS or BIA would revise its procedures at the behest of a single alien facing deportation. *Haitian II*, 676 F.2d at 1034. We do not believe it was reasonable for the government, in light of *Mathews*, to believe that the district court would exercise its discretion in a manner which would foreclose any meaningful review of the procedures the INS employed in the Haitian program.

### Shifting the Burden

▇▇▇ The district court, in its opinion, incorrectly suggested that the government bore the burden of proof in proceedings on the merits of an alien's claim for asylum. We found that the language which suggested this shift in the burden of proof was no more than "harmful dictum." *Haitian II*, 676 F.2d at 1042. This was a small collateral issue on appeal. It certainly does not justify the government's defense in this long protracted and complex case. The plaintiffs never sought to have the burden

of proof shifted from the applicant to the government in asylum proceedings. They only sought the opportunity adequately to present their case in a fair and impartial proceeding.

### Violation of Regulations

▇▇▇ The major issues litigated in the district court in *Haitian I* were the plaintiffs' due process and equal protection claims. In connection with these issues the district court admitted a large amount of evidence on the conditions in Haiti. We find it unnecessary to examine the reasonableness of the government's position on these issues.[9] We will assume for the purposes of argument that the government's position in each of these issues was substantially justified. This assumption, however, does not mean that the government's litigation position was reasonable.

The district court found that "INS procedures were willfully and systematically violated...." *Haitian I*, 503 F.Supp. at 520. The INS must adhere to its own regulations and procedures. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954); *United States v. Nixon*, 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3101–02, 41 L.Ed.2d 1039 (1974). We cannot say that the district court's factual findings were clearly erroneous or that it misinterpreted the relevant regulations.[10] It is clear that the INS violated its own regulations and knew that it was violating them. *Haitian I*, 503 F.Supp. at 513. Given this background it

---

9. Although we do not reach these issues it should be noted that in *Haitian II*, even though we did not reach the equal protection issue, we specifically stated that we did not approve of the district court's sweeping conclusions in regard to that issue. 676 F.2d at 1041. As to the evidence on the conditions in Haiti, we held that it was admissible only for the limited purpose of demonstrating the scope of evidence available to the plaintiffs to support their asylum claims. *Id.* at 1042. Furthermore, the government contends that the district court's holding on the due process issue, has been questioned by another panel of this court in *Jean v. Nelson*, 727 F.2d 957 (11th Cir.1984) *aff'd on other grounds*, — U.S. —, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

10. For example, the Operating Instructions for the INS state:

> In any case in which deportation proceedings have been initiated and the alien or his representative introduces a request for asylum, the special inquiry officer shall postpone the hearing to enable the district director to fully consider the bona fides of the request.

O.I. 108.1f(2)

The only reasonable interpretation of this regulation is that suspension of the deportation hearing is required when an alien applies for asylum. This was the interpretation the district court made. 503 F.Supp. at 520.

was unreasonable for the government to engage in a long protracted defense in a complex case, when it was clear from the caselaw that the plaintiffs would prevail on the singular basis of the INS violating its own regulations. *Matthews v. United States,* 713 F.2d at 683. Therefore, assuming the government was correct as to the due process and equal protection issues, it was patently unreasonable to carry on this litigation when the plaintiffs were entitled to relief under an alternative basis.

▪ In conclusion, we hold that the government was substantially justified only in contesting the jurisdiction of the district court as to Counts One through Three. In *Matthews v. United States,* this court adopted the approach followed by the Third Circuit. We held that the "United States is only responsible for 'that portion of the expenses attributable to its unjustified positions.'" 713 F.2d at 684 (quoting *Goldhaber v. Foley,* 698 F.2d 193, 197 (3d Cir.1983). But, in the. case at bar, the issues raised in Counts One through Three involved the same factual bases as the remaining counts. Furthermore, the issues were intertwined with the remaining legal theories. In such cases the "lawsuit cannot be viewed as a series of discrete claims" and the attorneys should be fully compensated for their work on the case as a whole. *Hensely v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Therefore, the district court did not abuse its discretion in awarding attorneys' fees for the case as a whole.

*Fees for Fees*

The district court awarded $14,472.35 to Mr. Kline and Ms. Hudsmith of the Washington, D.C. firm of Steptoe & Johnson for their work in representing the Lawyers' Committee for Civil Rights Under Law in their application for fees in this case. Their application for fees is on a different footing from the others since they did not represent any of the plaintiffs on the merits.

There currently appears to be a split of authority as to the proper standard in awarding fees for fees. The Eighth and Ninth Circuits have held that a court may award fees for fees only if the government's position in the fees litigation was not substantially justified. *See Cornella v. Schweiker,* 741 F.2d 170 (8th Cir.1984); *Rawlings v. Heckler,* 725 F.2d 1192 (9th Cir.1984). But the District of Columbia Circuit, in dictum, has criticized this view as presenting a "Kafkaesque judicial nightmare." *Cinciarelli v. Reagan,* 729 F.2d 801, 810 (D.C.Cir.1984). Instead they suggested that fees for fees should be allowed *per se. Id.*

▪ Neither the original EAJA nor the Act's recent amendments directly address the issue of awards to fee counsel, *i.e.* those attorneys hired to represent the plaintiff's attorneys during fee application and litigation. Congress did clarify the original Act to include underlying agency actions as well as the litigation position in a determination of the substantial justification of the government's position. In so doing, Congress appears to express diminished concern for the government's litigation position, viewed in isolation. Therefore, in this case of first impression for the Eleventh Circuit, we apply the general intent of the Act and decline to hold that this court may award fees for fees only if the government's position in the fees litigation was not substantially justified. In upholding the district court's award to fee counsel, we attempt to make the prevailing party whole by compensating the plaintiffs for the work performed by fee counsel during the district court proceedings and during this appeal. The remedial purpose of EAJA is best served by considering the totality of prelitigation and litigation circumstances in awarding fees.

▪ Several courts have awarded fees for time spent in connection with fee and expense applications. *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 771 F.2d 521 (D.C.Cir.1984) (hours reasonably devoted to request for fees are compensable); *Sierra Club v. EPA,* 769 F.2d 796 (D.C.Cir.1985) (outside attorney com-

pensated at reasonable rate for preparation of fee petition); *Schuenemeyer v. United States,* 776 F.2d 329, 333 (Fed.Cir.1985) (attorney fees incurred in the preparation of fee application are compensable); *Tyler,* 695 F.2d at 77 (amount of recovery may include time spent preparing and prosecuting motion for attorney fees). In order to grant plaintiffs full vindication of their rights under EAJA, we uphold the district court's award of attorney fees to fee counsel, Mr. Kline and Ms. Hudsmith. We do not have the issue of the district court's method of computing fees before us because the government has waived this issue. Consequently, we make no ruling on the district court's award of an hourly rate above the statutory maximum or its award of a cost of living increase. "In the last analysis, however, the fulfillment of the congressional purpose depends upon the ultimate judgment of the district court, not just the mechanical application of established principles." *Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1211 (11th Cir.1983) (award of attorney fees under Civil Rights Attorneys Fees Awards Act). Like *Johnson,* the present case has involved several years of litigation resulting in the successful vindication of important rights.

*Post-Judgment Interest*

The August 5, 1985, amendments to EAJA added the following paragraph to 28 U.S.C. § 2412:

 (f) If the United States appeals an award of costs or fees and other expenses made against the United States under this section and the award is affirmed in whole or in part, interest shall be paid on the amount of the award as affirmed. Such interest shall be de-

termined under section 1961(a) of this title, and shall run from the date of the award through the day before the date of the mandate of affirmance.[11]

In accordance with this provision, government must pay interest on the amount of the district court's award, $441,-094.98, for the applicable time period.[12]

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

---

**11.** The language of this paragraph contradicts and consequently overrules our holding in *Arvin v. United States,* 742 F.2d 1301 (11th Cir. 1984) (holding that district court has no authority to award interest on EAJA attorneys' fees judgment).

**12.** The government has called our attention to two D.C. Circuit opinions filed after August 5, 1985, but based upon the original EAJA. *Hirschey v. Federal Energy Regulatory Commission,* 777 F.2d 1 (D.C.Cir.1985); *Massachusetts Fair Share v. Law Enforcement Assistance Administration,* 776 F.2d 1066, (D.C.Cir.1985). Having considered these cases, we find them inapposite and not applicable to this decision.