**ASSOCIATION FOR RETARDED CITIZENS OF ALABAMA, INC., a non-profit corporation; William Doss, individually and as next friend of Robin Doss, a minor; Judy Henry, individually and as next friend of Michael Bradley Henry, a minor; and Jimmy Sherrill, individually and as next friend of Jimmy Zron Sherrill, a minor, Plaintiffs-Appellants,**

v.

**Wayne TEAGUE, as Superintendent of Education of the State of Alabama, Defendant-Appellee.**

No. 86–7534.

United States Court of Appeals, Eleventh Circuit.

Oct. 19, 1987.

Capouano, Wampold, Prestwood & Sansone, P.A., Alvin T. Prestwood, Leon M. Capouano, Ellis D. Hanan, Montgomery, Ala., for plaintiffs-appellants.

---

Denise B. Azar, Montgomery, Ala., for defendant-appellee.

Before VANCE and KRAVITCH, Circuit Judges, and BROWN *, Senior Circuit Judge.

VANCE, Circuit Judge:

This case involves the requirement that plaintiffs asserting claims under the Education for All Handicapped Children Act must first exhaust state administrative remedies before bringing an action in federal court. Plaintiffs argue that, in the particular circumstances of this case, resort to the state procedures would have been futile and thus their bypassing of the administrative process was proper. We disagree.

## I.

This action was initiated by the Association for Retarded Citizens of Alabama, Inc., and five parents of handicapped children, on behalf of a class of not less than 6000 handicapped children who had been students in the Alabama public school system from 1979 to 1986. Plaintiffs seek declaratory and injunctive relief against defendant Wayne Teague, in his capacity as Superintendent of Education of the State of Alabama. Their complaint raises two principal claims.[1] First, plaintiffs allege that the defendant violated the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401 *et seq.*, ("EHA") by failing to provide them with the "free appropriate public education" called for by the Act. Plaintiffs contend that, due to insufficient funding, the State has not provided the facilities and programs necessary for the required education. Secondly, plaintiffs claim that defendants violated the due process clause of the fourteenth amendment of the United States Constitution. Plaintiffs maintain that "the failure of the defendant to establish a meaningful and effective administrative review process" constitutes a deprivation of due process of law entitling them to relief under 42 U.S.C. § 1983.

Plaintiffs made no attempt to employ any state administrative remedies before filing this suit. In their complaint, plaintiffs declare that they "have not exhaused the administrative remedies provided for in 20 U.S.C. § 1415 because to do so would be a totally futile effort." Plaintiffs allege that the administrative proceedings are incompetent to order the class relief sought by plaintiffs and that the procedures are so constructed as to deny an opportunity for a fair hearing. The district court, however, reached a different conclusion. The district court considered plaintiffs' arguments about the ineffectiveness of the administrative process to be "hypothetical." Perceiving no good reason for plaintiffs' failure to exhaust the available state administrative remedies, the district court granted the defendant's motion for summary judgment.

## II.

The EHA provides public school districts with federal funding for the education for handicapped children so long as the "[s]tate has in effect a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). The Act defines "free appropriate public education" and sets out a system by which each child's individual educational

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Plaintiffs also brought a claim under 42 U.S.C. § 1983 alleging violations of the equal protection clause of the fourteenth amendment and a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794. In *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), however, the Supreme Court held that Congress intended the EHA to be the exclusive avenue through which an equal protection claim for discrimination on the basis of a handicapped condition can be pursued. *Id.* 104 S.Ct. at 3467–69. Similarly, plaintiffs' Rehabilitation Act claim is subsumed by the EHA claim. *Smith v. Robinson* determined that the EHA was a clear and precise balancing of the rights of handicapped children to a free education and that a plaintiff may not circumvent these remedies by resort to § 504 of the Rehabilitation Act. *Id.* at 3470–73.

needs will be accommodated. 20 U.S.C. § 1401(18). Along with its substantive provisions mandating special education and related services for the handicapped, the EHA also contains a detailed procedural component. Any state or local agency receiving federal assistance under the Act must, in accordance with the requirements of 20 U.S.C. § 1415, establish and maintain procedural safeguards. Among these safeguards is the requirement that parents be given the opportunity to contest virtually any matter concerning the provision of a "free appropriate public education" to such child. *Id.* at § 1415(b)(1)(E). Additionally, if the parents of a handicapped child decide to bring a complaint, they must be given an "impartial due process hearing." *Id.* at § 1415(b)(2). Federal regulations mandate that a hearing must be held and a final decision must be reached not later than 45 days after the public agency receives a request for a hearing. 34 C.F.R. § 300.-512. Upon completion of the administrative process, any party dissatisfied with the administrative final decision may "bring a civil action with respect to the complaint" in either state or federal court. 20 U.S.C. § 1415(e)(2). *See also Manecke v. School Board of Pinellas County, Fla.*, 762 F.2d 912, 916–17 (11th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986).[2]

The philosophy of the EHA is that plaintiffs are required to utilize the elaborate administrative scheme established by the Act before resorting to the courts to challenge the actions of the local school authorities. *See, e.g., Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Riley v. Ambach*, 668 F.2d 635, 640–41 (2d Cir.1981); *Ezratty v. Puerto Rico*, 648 F.2d 770, 774–75 (1st Cir.1981);

*cf. Panola Land Buyers Association v. Shuman*, 762 F.2d 1550 (11th Cir.1985); *Deltona Corp. v. Alexander*, 682 F.2d 888 (11th Cir.1982). This exhaustion rule serves a number of important purposes, including (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error. *See Deltona Corp. v. Alexander*, 682 F.2d at 893; *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1034 (5th Cir. 1982); *see also McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *Ecology Center of Louisiana, Inc. v. Coleman*, 515 F.2d 860, 866 (5th Cir.1975); *Riley v. Ambach*, 668 F.2d at 640.

The exhaustion rule, however, "is not to be applied inflexibly."[3] *Ezratty v. Puerto Rico*, 648 F.2d at 774 (quoting *McGee v. United States*, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971)). Courts have recognized that the exhaustion of the administrative process is not required where resort to these remedies would be futile or inadequate. *See Smith v. Robinson*, 468 U.S. at 104 n. 17, 1019 n. 22, 104 S.Ct. at 3469 n. 17, 3472 n. 22, 82 L.Ed.2d 746 (1984); *Monahan v. Nebraska*, 687 F.2d 1164, 1168 (8th Cir.1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983); *Armstrong v. Kline*, 476 F.Supp. 583, 601–02 (E.D.Pa.1979), *remanded on other grounds sub nom., Battle v. Pennsylvania*, 629 F.2d 269 (3d Cir.

---

**2.** For a more detailed description of the workings of EHA, *see Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Ezratty v. Puerto Rico*, 648 F.2d 770, 772 & n. 1 (1st Cir.1981); Note, *Enforcing the Right to an "Appropriate" Education: The Education for All Handicapped Children Act of 1975*, 92 Harv.L. Rev. 1103 (1979).

**3.** A flexible approach to the exhaustion requirement appears consistent with the intent of Con-

gress. As Senator Williams, author of the Senate bill and chairman of the Labor and Public Welfare Committee, explained during the Senate debate: "I want to underscore that exhaustion of the administrative procedures established under this part should not be required for any individual complainant filing a judicial action in cases where such exhaustion would be futile either as a legal or practical matter." 121 Cong.Rec. 37416 (1975).

1980), *cert. denied*, 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); *see also Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir.1978). For example, courts have not required exhaustion of administrative remedies when the administrative procedure is incapable of granting the relief requested. *See Loughran v. Flanders*, 470 F.Supp. 110 (D.Conn.1979); *cf. Panola Land Buyers Association v. Shuman*, 762 F.2d 1550, 1556-57 (11th Cir.1985); *Gregg B. v. Board of Education of Lawrence School District*, 535 F.Supp. 1333, 1337-38 (E.D.N.Y.1982).

■ Applying these principles to plaintiffs' claims in this action, we conclude that the district court did not abuse its discretion by requiring exhaustion of state administrative remedies. *See Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1498-99 (11th Cir.1986); *Ezratty v. Puerto Rico*, 648 F.2d at 774 ("courts are free to use their discretion ... applying the [exhaustion] doctrine, or not, in accordance with its purposes"). The underlying issue—whether defendants were providing the educational facilities and programs to which the handicapped children were entitled—calls out for resolution initially at the administrative level. An examination of defendant's efforts at educating the handicapped will demand the expertise and discretion for which the state agency is especially qualified.[4] Such a determination also will require extensive factfinding and expert testimony about the present facilities and programs and the needs of the handicapped children, and judicial economy would be well served by having a state hearing officer develop the record on these questions prior to court review. In light of the sweeping nature of plaintiffs' claims, an administrative hearing will go far to clarify the specific factual and legal matters in dispute.

Most importantly, permitting plaintiffs to bypass the Act's detailed administrative procedures would "run counter to Con-

gress' view that the needs of handicapped children are best accommodated by having the parents and local education agency work together to formulate an individualized plan for each handicapped child's education." *Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). The "free appropriate public education" required by the Act is tailored to the unique needs of the handicapped child by means of an "individualized educational program" (IEP). 20 U.S.C. § 1401(18). The IEP is prepared at a meeting between a qualified representative of the local education agency, the child's teacher, the child's parents or guardian, and, where appropriate, the child. 20 U.S.C. § 1414(a)(5). The legislative record reflects a strong emphasis on the role of parental involvement in assuring that appropriate services are provided to a handicapped child. *See* S.Rep. No. 94-168, 94th Cong., 1st Sess. *1*, *reprinted in* 1975 U.S. Code Cong. & Admin. News 1425; *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 208-09, 102 S.Ct. 3034, 3052, 73 L.Ed.2d 690 (1982). Yet plaintiffs in this case ask the courts to determine the meaning of "free appropriate public education" for thousands of handicapped children by judicial edict. Given the clear Congressional desire for ongoing parental consultation with local authorities and the detailed procedural scheme Congress established to ensure this consultation, the district court correctly held that plaintiffs were required to utilize these procedures before bringing this action.

Plaintiffs assert that the administrative processes were inadequate, arguing that exhaustion will cause plaintiffs irreparable harm, that the State was unprepared to handle thousands of individual administrative hearings, and that these individualized hearings would be unlikely to produce the necessary funding for new programs and facilities. Plaintiffs can offer no basis for

---

**4.** "[C]ourts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" *Bd. of Educ. of Hendrick Hudson Cent. School Dist. v. Rowley*, 458 U.S. 176, 208, 102 S.Ct. 3034,

3052, 73 L.Ed.2d 690 (1982) (quoting *San Antonio Independent School Dist. v. Rodriquez*, 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973)).

alleging irreparable harm, except the general importance of special education for these vulnerable handicapped children. This rationale cuts too broadly, however, since it would negate the exhaustion requirement in all cases arising under the EHA. In addition, as the district court points out, there is no indication that the disposition of a few representative claims would not satisfactorily resolve plaintiffs' complaint. The due process hearings would serve to highlight the remedial action required to guarantee the rights of all members of plaintiffs' class and likely lead to the implementation of those remedies which are universally applicable. If after a few such individualized state hearings it becomes clear that the state processes are overloaded or ineffectual, a federal court action seeking relief under the EHA would then be appropriate. *See Rhodes v. United States,* 574 F.2d 1179, 1181–82 (5th Cir. 1978); *Riley v. Ambach,* 668 F.2d at 641.[5]

### III.

■ Plaintiffs' due process claim is subject to a different analysis. *See Manecke v. School Board of Pinellas County Fla.,* 762 F.2d 912 (11th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986). Since this claim is brought under § 1983, exhaustion of administrative remedies is not required. *See Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Rose v. Nebraska,* 748 F.2d 1258, 1261 (8th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 50 (1985). Plaintiffs, however, have produced no evidence to support their allegations that defendant's ad-

ministrative remedies are "a sham" and "incapable of resolving the issues." Plaintiffs can point to no decision by a due process hearing officer which was not decided in a timely fashion, was not implemented due to a lack of funds, or was fundamentally unfair. The uncontroverted affidavits of Michael White, a due process hearing officer appointed by defendant, and Barry Blackwell, an official in the Alabama Department of Education, state that defendant administers an impartial hearing process by which all matters addressed in the due process hearings are decided within 45 days of the state's having received requests for such hearing and all decisions are reached independently without influence or input of any other state official. Absent any disputed issue of material fact, the district court correctly granted summary judgment in favor of defendants on the due process claim. *See Victoria L. v. District School Board of Lee County, Fla.,* 741 F.2d 369, 372 (11th Cir.1984) (conclusory assertion that defendants violated due process by not complying with EHA procedural provisions failed to survive summary judgment motion).

### IV.

The judgment of the district court is, accordingly, AFFIRMED.

---

**5.** Plaintiffs rely heavily on *Jose P. v. Ambach,* 669 F.2d 865 (2d Cir.1982), and *Haitian Refugee Center v. Meese,* 791 F.2d 1489 (11th Cir.1986), two cases in which the court concluded that resort to administrative procedures would be futile. In *Jose P.,* the defendant commissioner conceded that his agency would be unable to expeditiously process the claims of the members of the plaintiff class and that the City had been slow to comply with his previously orders. The *Jose P.* court therefore concluded that "New York's administrative remedies were not adequate or speedy." *Id.* at 869 & n. 2. The evidence in the instant case warrants no such conclusion.

*Haitian Refugee Center v. Meese* also presents a very different type of claim than that brought by plaintiffs here. The plaintiffs in *Haitian Refugee* undertook a constitutional challenge to the entire administrative procedure used by the Immigration and Naturalization Service. As the *Haitian Refugee* court noted, resort to administrative procedures makes little sense in the context of a broad constitutional adjudication. 791 F.2d at 1499. Administrative procedures are intended for issues, such as the substantive claim presented by plaintiffs here, which require expertise, factfinding, and individualized attention.