872 F.2d 373
 UNITED STATES of America, Plaintiff-Appellant,
v.
J.H.T., INC., a Florida Corporation, E.U. Timmons, an
individual, Ronald Gillman and Upper Keys Marine
Construction, Inc., a Florida
corporation, Defendants,
Sunland Estates, Inc., a Florida corporation, Defendant-Appellee.
 No. 88-5548.
 United States Court of Appeals,
Eleventh Circuit.
 May 3, 1989.
 
 Richard Harrison, Asst. U.S. Atty., Miami, Fla., Maria A. Iizuka, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for plaintiff-appellant.
 Mallory H. Horton, Horton, Perse & Ginsberg, Miami, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before VANCE and COX, Circuit Judges, and DYER, Senior Circuit Judge.
 DYER, Senior Circuit Judge:
 The United States appeals a district court order which awarded Sunland Estates, Inc.[1] fees and costs in the amount of $25,610.00 under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412(d)(1)(A) (1982). The United States argues that the fee application was time barred by the Act. We agree and reverse.
 
 
 1
 In 1971, J.H.T., Inc. dredged a canal in southern Florida and placed fill below the mean high water mark without first obtaining a permit under Section 10 of the Rivers and Harbors Appropriations Act of 1899, 33 U.S.C. Sec. 403 (1982), from the Corps of Engineers. The developer plugged the unauthorized canal and applied for an after-the-fact permit. Under the terms of the permit, the developer was allowed to unplug the canal provided it restored the fill area to its prior condition. J.H.T. sold the property to Sunland before doing any of the work under the permit. The permit thereafter expired. The sales contract provided that Sunland "understands and agrees that the canal which the above described property is adjacent to is plugged up and the seller does not have the authority or the appropriate permits to remove the plug or to dredge the canal to deep water."
 
 
 2
 Two years after the sale, the United States sued Sunland claiming that it had allowed the canal to become reconnected to the ocean and had placed additional fill on the illegal fill already in place. Summary judgment was entered against the United States on July 5, 1984, because it continually failed to respond to defendants' Motion for Summary Judgment after the court had granted the government two extensions of time. The district court reserved jurisdiction to enter such other orders that it deemed necessary and proper, including, but not limited to, taxing costs and reasonable attorney's fees. Sunland moved for and was granted costs against the United States in November 1984, but did not move for attorney's fees.
 
 
 3
 On August 19, 1985, the Corps issued a cease and desist order to Sunland citing new violations not covered by the previous law suit. Sunland took the position that the prior judgment precluded the Corps actions. Sunland filed a "Motion for Clarification of Judgment" in November 1985 asserting that the cease and desist order was improper since "the issues had already been determined in this Defendant's favor in the Court's granting its Motion for Summary Judgment." The United States responded that the summary judgment entered in 1984 did not authorize subsequent violations of federal laws. After the court denied Sunland's motion to clarify the judgment on February 10, 1986, the United States sued Sunland alleging that new violations had occurred in 1985.
 
 
 4
 On February 17, 1986, Sunland renewed its motion to clarify the judgment. The court granted the motion and issued an order to clarify the judgment on April 21, 1986. The order stated that the "final judgment that was entered on the basis of the summary judgment claim shall have full force and effect for purposes of res judicata and of collateral estoppel." In effect, this order prevented prosecution of the federal law violations involved in the first suit, but did not prevent the government from pursuing the second suit. The order granted no affirmative relief. The United States took a protective appeal from this order on June 20, 1986, but subsequently concluded that it was an unappealable order and dismissed the appeal on December 23, 1986.
 
 
 5
 On May 8, 1986, Sunland filed a motion for costs and attorney's fees. The United States argued, among other things, that the application was untimely. At a February 1988 hearing to consider the fee application, the district court observed that the government had not appealed from the 1984 order granting final summary judgment for Sunland, and that the government had commenced another lawsuit. It awarded a fee to Sunland of $25,610.00 which the government now contests.
 
 
 6
 The Equal Access to Justice Act ("EAJA") provides that a "party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses...." 28 U.S.C. Sec. 2412(d)(1)(B) (1982). It is settled that a "final judgment" means that the judgment is final and not appealable. 28 U.S.C. Sec. 2412(d)(2)(G). As this court held in James v. Dept. of Housing and Urban Dev., 783 F.2d 997 (11th Cir.1986), the final judgment requirement is "the date which a party's case has met its final demise, that there is nothing further the party can do to give it life." Id. at 999.
 
 
 7
 In Haitian Refugee Center v. Meese, 791 F.2d 1489 (11th Cir.1986), this court held that since the EAJA is a waiver of sovereign immunity, "[t]he condition that the applications for attorneys' fees must be filed within 30 days of the final judgment in the action is jurisdictional." Id. at 1494 (quoting Action on Smoking and Health v. Civil Aeronautics Board, 724 F.2d 211, 225 (D.C.Cir.1984)). Hence, if Sunland untimely filed the fee applications, the district court lacked jurisdiction to award attorney's fees. Haitian Refugee Center, 791 F.2d at 1494. Sunland urges that the court did not lack jurisdiction because the government's actions were such as to extend the time for filing its application for attorney's fees under the EAJA. It asserts that its motion to clarify the judgment filed in November 1985, the court's order thereon on April 29, 1986, and the government's appeal of this order made the first suit appear to continue which made the judgment nonfinal. Sunland argues that these post-judgment events must toll its time for filing an application for attorney's fees otherwise injustice and inequity will be visited upon it.
 
 
 8
 We find Sunland's arguments unpersuasive. "[I]f the concept of a filing deadline is to have any content, the deadline must be enforced." See United States v. Locke, 471 U.S. 84, 101, 105 S.Ct. 1785, 1796, 85 L.Ed.2d 64 (1985). The proceedings on the Motion for Clarification, filed sixteen months after entry of final judgment, clearly indicate that Sunland believed that the United States was not abiding by the terms of the 1984 judgment. It did not question the finality of the judgment. It only sought a holding that the parameters of that judgment were broad enough to preclude the government's cease and desist order. The district court's order did not grant any affirmative relief, it simply iterated the breadth and extent of the earlier holding. Thus, Sunland's motion to clarify the judgment did not affect the finality of the prior judgment.
 
 
 9
 Further, the government's appeal from the clarification order did not toll the filing deadline. Since the judgment entered in 1984 determined, fixed and disposed of the parties' rights as to the issues in the suit, Gilbert v. Braniff Intern. Corp., 579 F.2d 411, 413 (7th Cir.1978), it was a final judgment. The motion to clarify the final judgment did not serve as a basis to extend the time for filing an application for attorney's fees. This being so, the government's appeal, later dismissed, from the clarification order is of no moment.
 
 
 10
 Sunland also attempts to explain its failure to file a timely fee application in connection with the 1984 litigation by arguing that the government's dilatory tactics and the filing of a second suit in February 1986 almost identical to the first suit, left it in a quandary. This is hyperbole. The second suit had nothing to do with the finality of the judgment entered in 1984. The first suit was predicated on earlier violations of Section 10 of the Rivers and Harbors Appropriations Act of 1899, 33 U.S.C. Sec. 403 (1982). The second suit alleged new violations which occurred in 1985. It is self evident that the filing of the second suit could not extend the time for filing the fee application.
 
 
 11
 To be timely, Sunland's fee application had to be filed no later than November 8, 1984, 30 days beyond the 60 day appeal period. Having failed to do so, Sunland cannot attempt to revive the lost opportunity by filing a post judgment pleading long after the time for filing for fees has passed.
 
 
 12
 Finally, although it is far from clear, Sunland appears to take the further position that the district court had jurisdiction to grant it attorney's fees based upon its motion for clarification of judgment and its defense of the government's second suit since its fee application was filed within 30 days of these events. This argument has no merit. Sunland did not prevail in either instance, nor did it meet the explicit conditions of the statute that it was both an eligible party in terms of net worth, and that the government's position was not substantially justified.
 
 
 13
 The district court judgment awarding attorney's fees to Sunland under the EAJA is reversed and the cause is remanded to the district court to dismiss Sunland's application for fees for lack of jurisdiction.[2]
 
 
 14
 REVERSED and REMANDED.
 
 
 
 [1]
 While the caption of the case refers to Appellee as J.H.T. Inc., it sold the property in question to Sunland Estates, Inc. before the events giving rise to this action occurred
 
 
 [2]
 In view of our disposition of this case, we do not review the government's assignment of error to the district court's failure to articulate any findings supporting the award of fees against the United States