Doris MYERS, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of the Department of Health and Human Services of the United States, Defendant–Appellee.

Carolyn L. GRIMES,
Plaintiff–Appellant,

v.

Louis W. SULLIVAN, in his official capacity as the Secretary of the Department of Health and Human Services of the United States, Defendant–Appellee.

Althea D. PARKER, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, as U.S. Secretary of Health and Human Services, Defendant–Appellee.

Mary COHEN, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant–Appellee.

Nos. 89–3533, 89–3550, 89–3576 and 89–3661.

United States Court of Appeals, Eleventh Circuit.

Nov. 6, 1990.

Sarah H. Bohr, Jacksonville Area Legal Aid, Inc., Jacksonville, Fla., for plaintiff-appellant.

Christine Bradfield, U.S. Dept. of Health and Human Services, Atlanta, Ga., Ralph Lee, John Lawlor, Asst. U.S. Atty., Jacksonville, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, ANDERSON, Circuit Judge, and ESCHBACH*, Senior Circuit Judge.

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

ANDERSON, Circuit Judge:

These consolidated cases involve the question of when a claimant who obtains full benefits from the Secretary of Health and Human Services subsequent to a district court remand must file a petition for attorney's fees under the Equal Access to Justice Act,[1] ("EAJA").[2] In each of the four cases before us, the claimant applied for either Social Security disability benefits, Supplemental Security Income, or both, and was denied benefits by the Secretary of Health and Human Services (hereinafter "the Secretary"). Each claimant then initiated judicial review of the Secretary's final decision pursuant to 42 U.S.C. § 405(g). Consistent with the magistrates' recommendations concerning the issues raised in each of the four cases, the district court ordered the cases remanded to the Secretary for additional proceedings. Subsequently, the Secretary determined that each of the four claimants was entitled to full receipt of the benefits requested.

In each case, the parties then returned to the district court and informed the district court of the Secretary's new decision. The district court in each case then entered an order affirming the Secretary's decision and dismissing the litigation. Subsequent to these dismissal orders, each of the claimants filed a motion for attorney's fees under the EAJA; none of the four claimants' motions were filed within thirty days of the district court's orders dismissing the litigation. Accordingly, the district court dismissed the applications for attorney's fees, ruling that it did not possess jurisdiction to consider the applications because they were not filed in compliance with the EAJA's

mandate that fee applications be filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B).

The claimants now appeal, arguing that the district court's conclusions in the various cases are inconsistent with the EAJA and rest on a misconception of the law concerning the Secretary's ability to appeal district courts' orders in Social Security cases. Finding ourselves in agreement with the claimants in three of the four cases presented, we vacate the district court's orders and remand those cases for further proceedings. Although we are not in total agreement with the district court's analysis in the fourth case, given the particular facts presented, we affirm the district court's conclusion that it was without jurisdiction to consider the petition filed in that case.

## I. BACKGROUND OF THE FOUR CASES

These appeals involve the attempts of four claimants, Doris Myers, Althea Parker, Carolyn Grimes, and Mary Cohen, to obtain attorney's fees under the EAJA after having successfully challenged the Secretary's decision denying requested Social Security disability or Supplemental Security Income ("SSI") benefits. We briefly summarize the proceedings leading up to the present appeal in each case.

*Doris Myers:* Myers applied for both SSI and Social Security benefits on May 15, 1986. After her application was denied, she requested and was granted an administrative hearing before an administrative law judge ("ALJ"). The ALJ, although

---

**1.** Equal Access to Justice Act, Pub.L. No. 96–481, 94 Stat. 2325 (1980), as extended and amended by Pub.L. No. 99–80, 99 Stat. 183 (1985) (codified in pertinent part at 28 U.S.C.A. § 2412).

**2.** This issue has been the result of a flurry of recent federal court opinions. The results, however, have been widely divergent. *Compare, e.g., Melkonyan v. Heckler,* 895 F.2d 556 (9th Cir.1990) (application for EAJA attorney's fees must be filed within 30 days after the Secretary's final decision on remand awarding claimant full benefits); *Watson v. Sullivan,* 735 F.Supp. 971, 973–74 (D.Ore.1990) (same); *Wagaman v. Bowen,* 698 F.Supp. 187, 189–90 (D.S.D.

1988) (same) *with, e.g., Brown v. Secretary of Health and Human Services,* 747 F.2d 878, 884–85 (3d Cir.1984) (application need not be filed until after district court issues final judgment approving of Secretary's remand decision and dismissing case); *Guthrie v. Schweiker,* 718 F.2d 104, 106 (4th Cir.1983) (same); *Sargent v. Secretary of Health and Human Services,* 739 F.Supp. 1067 (D.S.C.1990) (same); *Seymore v. Secretary of Health and Human Services,* 738 F.Supp. 235, 237–38 (N.D.Ohio 1990) (same); *Gutierrez v. Sullivan,* 734 F.Supp. 969, 971–72 (D.Utah 1990) (same); *Thompson v. Sullivan,* 715 F.Supp. 1019, 1020–21 (D.Kan.1989) (same).

finding that Myers suffered from severe hypertension and atherosclerotic vascular disease, concluded that Myers did not have a severe impairment or combination of impairments which met or equaled one listed in 20 C.F.R. Part 404 and 416, Subpart P, App. 1 (1986). The ALJ found that Myers's allegations of pain were not credible and were unsubstantiated by objective medical evidence; the ALJ further determined that Myers possessed the residual functional capacity to perform work-related activities which were not strenuous. As a result of these findings, the ALJ ruled that Myers was not entitled to receive benefits under either program.

Myers timely requested review of her petition before the Appeals Council, which denied her petition for review. Pursuant to 42 U.S.C. § 405(g), she then initiated civil proceedings in the Middle District of Florida.

While her case was pending, Myers received notices from the Secretary that, on the basis of a subsequently filed application for benefits, she had been awarded Social Security disability benefits commencing July 21, 1987 and SSI benefits commencing September 17, 1987. As a result, the issue in the federal court litigation became solely a question of whether the Secretary erred in not also awarding Myers disability benefits from May 15, 1986 through July 21, 1987, and SSI benefits from May 15, 1986 through September 17, 1987.

For approximately two months, Myers and the Secretary unsuccessfully engaged in settlement negotiations. Once negotiations for settlement became futile, Myers filed a motion to remand the case to the Secretary for consideration of new, noncumulative evidence which became available after the Secretary's decision was rendered. In response, the Secretary conveyed his agreement with Myers's position, stating that "The Defendant has no objection to the Plaintiff's Motion to Remand and agrees to pay benefits to the claimant from the onset date of May 2, 1986, the date she became disabled."

In light of this representation, the magistrate recommended the case be remanded to the Secretary for further proceedings. On June 23, 1988, the district court adopted this recommendation and remanded the case over the objection of Myers, who argued that judicial economy would best be served by immediately resolving the case on the basis of the Secretary's apparent concession.

On September 7, 1988, the Appeals Council issued a decision finding that Myers was entitled to Social Security and SSI disability insurance benefits for a period of disability commencing May 2, 1986. On November 8, 1988, Myers returned to the district court and requested that the district court enter a judgment reversing the Secretary's initial decision and awarding her Social Security and SSI disability benefits consistent with the Appeals Council's decision.

On November 28, 1988, having received no filing from the Secretary, the district court issued a judgment affirming the Secretary's decision on remand and dismissing the case. A little less than three months later, on February 27, 1989, Myers moved for attorney's fees pursuant to the EAJA. The district court *sua sponte* issued a show cause order questioning whether Myers's petition for EAJA attorney's fees was timely filed. After receiving briefing from both parties, the district court concluded that Myers's motion was untimely and dismissed her attorney's fee request. *Myers v. Sullivan,* 710 F.Supp. 1333 (M.D.Fla. 1989).

*Althea Parker:* Parker filed four applications for Social Security benefits and supplemental income on July 10, 1979, June 22, 1981, January 11, 1982, and March 29, 1983. Each application was denied by the Secretary. After the March 29, 1983, application was denied, Parker commenced suit in federal district court to review the Secretary's denial of that application. In this suit, she alleged that the Secretary erred in concluding that she did not suffer from a severe impairment.

Over the objections of the Secretary, the magistrate reviewing the case concurred with Parker. The magistrate found that

the ALJ erred in concluding that Parker was not suffering from a severe impairment. Finding that there was not substantial evidence in the record to support this conclusion, the magistrate recommended the case be remanded to the Secretary for further consideration. This recommendation was adopted by the district court and the case was remanded.

Upon remand, the Secretary concluded that Parker was entitled to receive benefits with an onset date of December 1, 1982. Parker returned to district court, this time challenging the onset date selected by the Secretary. She argued that the Secretary should have reopened her earlier applications for benefits in light of the fact that she was suffering from a mental impairment and was proceeding without counsel at the time that those applications had been denied. Relying principally upon *Elchediak v. Heckler*, 750 F.2d 892 (11th Cir. 1985), the magistrate concluded that the Secretary should have reopened Parker's applications if Parker's mental illness disability was responsible for her failure to challenge the Secretary's denial of her earlier applications. The magistrate recommended that the case be remanded to the Secretary for consideration as to whether Parker's mental illness prevented her from pursuing her initial claims.

The district court adopted this recommendation and the case was remanded to the Secretary a second time. Upon this second remand, the ALJ recommended that Parker be awarded benefits commencing on January 8, 1979. This recommendation was adopted by the Appeals Council on March 4, 1988. Responding to a motion by the Secretary requesting that the district court affirm his decision on remand, the district court, on May 18, 1988, affirmed the Secretary's new final decision and dismissed the case.

On August 16, 1988, Parker filed a motion for EAJA attorney's fees. After the Secretary filed his response objecting only to the amount of compensation requested by Parker's counsel, the district court *sua sponte* issued a show cause order to deter-

mine whether Parker's fee petition was timely filed. After considering Parker's response to the show cause order,[3] the district court concluded that Parker's fee petition was untimely and dismissed her motion.

*Carolyn Grimes:* Grimes filed an application for Social Security disability and SSI disability benefits on June 1, 1981, alleging disability since March 3, 1979, due to lupus and heart problems. After exhausting her administrative remedies before the Secretary, Grimes brought suit in federal district court to challenge the Secretary's decision denying her benefits. In this litigation, Grimes presented the following challenges: (1) that the Secretary erred as a matter of law in not finding that her Systemic Lupus Erythematosus was a listed impairment as defined by 20 C.F.R., Part 404, Appendix 1, § 10.04; (2) that the Secretary erred as a matter of law in failing to evaluate Grimes's complaints of severe pain and in failing to make a determination regarding her credibility; and (3) that the Secretary's decision was not based on substantial evidence. She also filed a motion requesting that, in the event the district court upheld the Secretary's decision, a remand be ordered to consider new, noncumulative, material evidence not in existence at the time of her administrative hearing.

In response to Grimes's various claims, the Secretary defended his initial decision denying her application for benefits. Additionally, the Secretary informed the court that "[s]hould the Court rule in favor of the Secretary in the present action, the defendant does not oppose a remand for a reconsideration in light of the newly submitted medical evidence."

The magistrate recommended that the district court remand Grimes's claim to the Secretary for additional consideration. The magistrate premised this recommendation on the fact that the ALJ did not discuss evidence of Grimes's pain in its decision and that Grimes's complaints of pain coupled with the objective medical symptoms causing that pain could be sufficient to

---

**3.** The Secretary filed no response to the district court's show cause order.

constitute a legal disability. Accordingly, the magistrate recommended that the case be remanded for appropriate discussion and findings relating to Grimes's pain allegations. The magistrate also recommended that Grimes's newly submitted medical evidence be considered upon remand. On May 13, 1985, the district court adopted this recommendation and remanded the case to the Secretary.

On remand, the Appeals Council issued a decision dated July 30, 1986, awarding Grimes Social Security disability insurance benefits and SSI commencing April 15, 1979. On July 29, 1988, Grimes filed a motion with the district court requesting that the court enter a judgment reversing the Secretary's initial final decision and awarding her disability benefits as found by the Appeals Council. On February 2, 1989, having received no response from the Secretary, the district court affirmed the Secretary's decision subsequent to remand and dismissed the litigation.

Grimes then filed a motion for EAJA attorney's fees on March 23, 1989. The Secretary moved to dismiss the fee application, arguing that Grimes did not timely file her fee petition. Agreeing with the Secretary, the district court granted the Secretary's motion and dismissed Grimes's motion for attorney's fees.

*Mary Cohen:* Cohen filed an application for SSI benefits on October 4, 1984. Once that application was denied, she pursued and exhausted her administrative remedies. Subsequently, on November 13, 1985, she initiated judicial proceedings to review the Secretary's decision denying her benefits.

Upon review of Cohen's claim, the magistrate found that the ALJ had made several errors in concluding that Cohen was not disabled. Because Cohen was suffering from a non-exertional impairment, the magistrate concluded that the ALJ should not have relied exclusively upon the Medi–Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, App. 2 (1985). *See Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir. 1985). The magistrate discounted the ALJ's contrary decision, observing that the ALJ discredited Cohen's assertions of pain

based solely upon observations during the administrative hearing. Following this court's decision in *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir.1984), the magistrate ruled that invocation of such a "sit and squirm" test by the ALJ was improper.

The magistrate recommended that the case be remanded to the Secretary for further proceedings. The magistrate also recommended that Cohen receive a vocational expert's testimony during these additional proceedings. Finally, the magistrate observed that the plaintiff had new evidence that was not in existence at the time of the original administrative proceedings. Concluding that this new evidence was material and not cumulative and that good cause existed for Cohen's failure to present the evidence during the original proceeding, the magistrate recommended that this evidence be considered on remand.

On August 1, 1986, the district court adopted the magistrate's report and remanded the case to the Secretary. After additional proceedings on remand, the Appeals Council issued the final decision of the Secretary on February 26, 1988, holding that, on the basis of her October 4, 1984, application for benefits, Cohen was disabled and entitled to receive benefits. On April 29, 1988, the Secretary filed a motion with the district court requesting that the district court affirm the final decision of the Secretary issued subsequent to the remand order. This motion was granted on May 19, 1988, and the litigation was dismissed.

On August 17, 1988, Cohen filed her application for EAJA attorney's fees. On September 19, 1988, the Secretary filed a memorandum challenging certain requests for fees made by Cohen, but not challenging her entitlement to receive EAJA attorney's fees. On June 6, 1989, the district court denied Cohen's motion for attorney's fees, ruling that the motion was not timely filed and that, consequently, it was without jurisdiction to consider the motion on its merits.

## II. CONTENTIONS OF THE PARTIES

On appeal, the claimants claim that their individual motions for EAJA attorney's

fees were timely. They argue that, under well-settled law, the district court's initial remand orders were interlocutory, nonappealable orders. Hence, they contend that, notwithstanding the fact that the Secretary ultimately capitulated and awarded on remand all of the requested benefits, it was unclear whether the Secretary might appeal from the district court's final post-remand order dismissing the case in order to challenge the district court's earlier interlocutory rulings. The claimants note that Secretary had sixty days after entry of the district court's orders dismissing the cases in which to take an appeal. Fed.R.App.P. 4(a)(1). Relying upon the 1985 amendments to the EAJA which clarified that a "final judgment" should be interpreted to mean "a judgment that is final and *not appealable*," 28 U.S.C. § 2412(d)(2)(G) (emphasis added), they argue that the district court's dismissal orders only became nonappealable orders when the Secretary's time for filing a notice of appeal expired. Because their fee applications were all filed within thirty days of the date when the Secretary became precluded from taking an appeal, they argue that their fee applications were timely.

On the other hand, the Secretary argues that the district court's post-remand orders dismissing the various cases were correctly considered final, nonappealable judgments for EAJA purposes. The Secretary notes that in each of the four cases, the Secretary awarded the claimants the full amount of requested benefits. As a result, the Secretary maintains, no case or controversy existed between the claimant and the Secretary because no issues remained to be appealed by either side. The Secretary observes that courts have held that it is "improper and inconsistent for the Secretary to urge review of his own findings." [4] Consequently, the Secretary intimates that he did not possess the legal authority to seek judicial review of his ultimate decision to award the claimants full benefits. Since he was unable to appeal his final decisions, the Secretary asserts that the district court's

orders dismissing the claimants' actions were final, nonappealable judgments for EAJA purposes.

## III. GENERAL PREREQUISITES TO OBTAINING AN EAJA FEE AWARD

The EAJA requires the district court to "award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The EAJA was enacted as a Congressional response to remedy the unfortunate economic reality that many individuals lack the financial resources to defend themselves against obdurate government action. By allowing individuals to recover their attorney's fees in cases in which the government's position was not "substantially justified", Congress sought to ensure that individuals would not be forced to sit idly when confronted with unreasonable governmental conduct. *See Sullivan v. Hudson*, 490 U.S. 877, ——, 109 S.Ct. 2248, 2253, 104 L.Ed.2d 941 (1989). Instead, Congress envisioned that the EAJA's fee-shifting mechanism would allow individuals to overcome the financial barriers that might otherwise preclude vindication of individual rights; such individual action, Congress believed, would both ensure that the rights of citizens were protected from governmental abuse and would ultimately stem inequitable and irresponsible abuses of authority by governmental agencies. *See Taylor v. Heckler*, 778 F.2d 674, 676 (11th Cir.1985) (citing H.R.Rep. No. 1418, 96th Cong., 2d Sess. 12, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4991); *see also Watford v. Heckler*, 765 F.2d 1562, 1566 (11th Cir. 1985) ("The purpose of the EAJA was to

---

**4.** Brief of Appellee, at 9 (citing *Wagaman v. Bowen*, 698 F.Supp. 187, 189 (D.S.D.1988), *Colon v. Secretary of Health and Human Services*, 877

F.2d 148, 151 (1st Cir.1989), and *Sheppeard v. Heckler*, 760 F.2d 1253, 1254 (11th Cir.1985)).

alleviate economic deterrents to contesting unreasonable government action by shifting the burden of attorneys' fees from the private litigant *to the government* where the government's position is substantially unjustified.") (emphasis in original).

■ Since the EAJA's enactment, the vast majority of EAJA awards have gone to claimants who succeeded in challenging contrary benefits decisions made by the Secretary of Health and Human Services. *See Pierce v. Underwood,* 487 U.S. 552, 564, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988). In such suits, this court has recognized that three statutory conditions must be satisfied before a district court can award EAJA attorney's fees. *See Taylor,* 778 F.2d at 676. First, the claimant must file an application for fees "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). This requirement is jurisdictional in nature, *see Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1494 (11th Cir.), *vacated in part on other grounds on reh'g,* 804 F.2d 1573 (11th Cir. 1986); thus, a claimant's failure to file an EAJA application within this time constraint precludes a district court from considering the merits of the fee application. *United States v. J.H.T., Inc.,* 872 F.2d 373 (11th Cir.1989).

■ Second, assuming the fee application was timely filed, the claimant must qualify as a "prevailing party." To be a prevailing party in a Social Security case, it is not sufficient for a claimant merely to obtain a court-ordered remand for additional administrative proceedings. *See Guglietti v. Sullivan,* 900 F.2d 397, 399 (1st Cir.1990); *Paulson v. Bowen,* 836 F.2d 1249, 1252 (9th Cir.1988); *Cook v. Heckler,* 751 F.2d 240, 241 (8th Cir.1984); *Brown v. Secretary of Health & Human Services,* 747 F.2d 878, 880–81 (3d Cir.1984); *McGill v. Schweiker,* 712 F.2d 28, 32 (2d Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420,

79 L.Ed.2d 745 (1984); *Miller v. Schweiker,* 560 F.Supp. 838 (M.D.Ala.1983); *see Sullivan v. Hudson,* 490 U.S. at ——, 109 S.Ct. at 2255 ("We think it clear that . . . a Social Security claimant would not, as a general matter, be a prevailing party within the meaning of the EAJA merely because a court had remanded the action to the agency for further proceedings."). Rather, the claimant must establish actual entitlement to some relief on the merits of his or her claims. *Jean v. Nelson,* 863 F.2d 759, 766 (11th Cir.1988), *aff'd on other grounds,* —— U.S. ——, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). A claimant can satisfy this test either by obtaining a judgment from a federal court ordering the Secretary to provide some of the requested relief to the claimant, *see, e.g., Martindale v. Sullivan,* 890 F.2d 410 (11th Cir.1990); *Jefferson v. Bowen,* 837 F.2d 461 (11th Cir.1988), or by establishing entitlement to benefits in administrative proceedings conducted subsequent to a court-ordered remand. *See, e.g., Hudson v. Secretary of Health and Human Services,* 839 F.2d 1453 (11th Cir. 1988), *aff'd,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989); *Stratton v. Bowen,* 827 F.2d 1447 (11th Cir.1987).

■ Finally, if the claimant is a prevailing party who timely filed an EAJA fee application, then the claimant is entitled to receive attorney's fees unless the government can establish that its positions were "substantially justified" or that there exist "special circumstances" which countenance against the awarding of fees. If the district court concludes that the government's positions were "substantially justified"— i.e., all of the government's arguments [5] possessed a "reasonable basis both in law and fact," *Jean v. Nelson,* 863 F.2d at 767, quoting *Pierce v. Underwood,* 487 U.S. at 565, 108 S.Ct. at 2550—then, notwithstanding the fact that the claimant ultimately prevailed in the litigation, the claimant is

---

5. An examination of whether the government's position was substantially justified encompasses an evaluation of *both* the agency's prelitigation conduct and the subsequent litigation positions of the Justice Department. *See Commissioner, I.N.S. v. Jean,* —— U.S. ——, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Under this inquiry, it is not

sufficient for the government to show that some of its earlier positions or arguments were valid. Unless the government can establish that *all* of its positions were substantially justified, the claimant is entitled to receive attorney's fees. *Hudson,* 839 F.2d at 1456 n. 3.

not entitled to receive attorney's fees. *See, e.g., Reeves v. Bowen*, 841 F.2d 383 (11th Cir.) (per curiam), *order on reh'g*, 860 F.2d 1009 (11th Cir.1988); *Jefferson v. Bowen*, 837 F.2d 461 (11th Cir.1988) (per curiam).

## IV. THE THIRTY-DAY DEADLINE FOR FILING AN EAJA FEE PETITION

### A. *Pre-1985 Authority*

Prior to the 1985 reenactment and amendments to the EAJA,[6] the requirement for filing a timely attorney's fee application merely provided that a party seeking such an award "shall, within thirty days of final judgment in the action, submit to the court an application...."[7] No definition of what should be considered a "final judgment" to start the EAJA clock ticking, however, was included in the Act. As a result, courts assumed divergent definitions as to what constituted a final judgment. Some courts interpreted this statutory directive as requiring a private party who prevailed in the district court to file a request for EAJA attorney's fees within thirty days of the judgment entered by the district court. *See, e.g., McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir.1983). *Accord Gold Kist, Inc. v. U.S. Department of Agriculture*, 741 F.2d 344 (11th Cir.1984). Under this line of cases, first suggested by the Ninth Circuit in *McQuiston*, the phrase "final judgment" in the EAJA was construed in accordance with that phrase's "common usage in contexts such as 28 U.S.C. § 1291, Fed.R.App.P. 4(a), and Fed.R.Civ.P. 54." *McQuiston*, 707 F.2d at 1085.

Other courts took strong exception with this conclusion. *See McDonald v. Schweiker*, 726 F.2d 311, 315 (7th Cir.1983). *Accord Keasler v. United States*, 766 F.2d 1227 (8th Cir.1985); *Russell v. National Mediation Bd.*, 764 F.2d 341, 344-49 (5th Cir.), *vacated on other grounds on reh'g*, 775 F.2d 1284 (5th Cir.1985); *Feldpausch v. Heckler*, 763 F.2d 229, 232 (6th Cir.1985); *Massachusetts Union of Public Housing, Inc. v. Pierce*, 755 F.2d 177, 180 (D.C.Cir. 1985); *Taylor v. United States*, 749 F.2d 171, 174 (3d Cir.1984). The position of these courts was articulated in the Seventh Circuit's opinion in *McDonald*. The *McDonald* court noted that the phrase "final judgment" has no fixed meaning, but instead takes on varied definitions depending upon the context. Accordingly, the court approached the issue by looking at the practical consequences of the Ninth Circuit's rule in *McQuiston*. The *McDonald* court noted that the EAJA's legislative purpose was to facilitate the ability of individuals with limited economic resources to vindicate their rights. 726 F.2d at 315. In contrast, the court observed, a rule requiring successful parties to file an EAJA application within thirty days of the district court's judgment had the potential of placing an undue and unnecessary burden on the private party. Such a rule, the court reasoned, could require private parties to file multiple fee applications—one at the close of the district court proceedings, and additional applications should the party successfully defend the district court's judgment on appeal. *See id.* at 314.

Additionally, the court noted that the *McQuiston* rule could frequently place the claimant at a distinct strategic disadvantage:

> An additional consideration is that to force the claimant to put in his fee application within 30 days of the filing of the final judgment in the district court, which is to say before the government need file its notice of appeal, delivers into the hands of the government a potent,

---

6. The EAJA was originally enacted by Congress in 1980. *See* Equal Access to Justice Act, Pub.L. No. 96-481, 94 Stat. 2325 (1980). The Act contained a sunset clause resulting in the Act's expiration on October 1, 1984. Pub.L. No. 96-481, § 204(c), 94 Stat. at 2329. In 1984, Congress approved S. 919, which would have reenacted and extended the EAJA. This bill was the subject of a presidential pocket veto and, thus, never became law. *See generally Taylor v. Unit-*

*ed States*, 749 F.2d 171 (3d Cir.1984) (discussing legislative attempt at reenactment). In 1985, Congress succeeded in reenacting and extending the EAJA. *See* Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99-80, 99 Stat. 183 (1985).

7. Pub.L. No. 96-481, § 204(a), 94 Stat. at 2328.

acknowledged, and from the standpoint of the policy of the Equal Access to Justice Act perverse weapon for discouraging meritorious fee applications. As this case demonstrates, the government is unlikely to pursue an appeal where the stakes are only $652.50. Its adversary knows this and knows also that if he increases the stakes to the government by applying for fees, the government (as it emphasized to us in its briefs and at argument) will be more likely to appeal the underlying judgment. Thus, if Mrs. McDonald's counsel had to decide whether to apply for fees before the government had to decide whether to pursue the appeal, he would have faced an exquisite dilemma: forgo any fee application and thereby preserve the wretched pittance that his client had wrung from the Social Security Administration only after bringing a review proceeding in a federal district court, or jeopardize her judgment in the hope of getting a reasonable fee for his work. The framers of the Equal Access to Justice Act could not have meant to create such a dilemma when they used the words "final judgment" without in all likelihood considering what the words might mean in the setting of the present case. They wanted to make it easier, not harder, for people of limited means to collect their small claims from the government. *See* H.R.Rep. No. 1418[, 96th Cong., 2d Sess. 18, 1980 U.S.Code Cong. & Admin. News at 4953].

*Id.* at 315.

Because the *McQuiston* rule ill-served the purposes underlying the EAJA, the *McDonald* court declined to adopt its rather stringent filing requirement. Instead, the *McDonald* court adopted a significantly more functional approach: in order for an EAJA fee to be considered timely filed, the court required claimants to file their petitions no later than thirty days after the trial court's judgment was no longer contestable through the appellate process. *Id.* at 313. Under this rule, a claimant could elect to file a fee petition within thirty days of the district court's judgment; however, a fee petition filed within thirty days after

it became evident that the government would not be taking any additional appeals of the district court's judgment—e.g., the government's time for taking an appeal expired or the government gave clear notice that it would not be pursuing an appeal—would also be considered timely filed. *See id.* at 314–16.

### B. *The 1985 Amendments and Implementing Case Law*

To remedy this split in the federal courts, Congress, in reenacting the EAJA in 1985, explicitly adopted the *McDonald* court's flexible formulation of the filing requirement. Responding to the *McDonald* court's suggestion that Congress modify the filing requirement to read "within thirty days of final judgment in the district court" if it preferred the *McQuiston* rule or "within thirty days after the judgment in the district court has become final and unappealable, or after the court of appeals or the Supreme Court has entered a final judgment" if it preferred the *McDonald* court's interpretation, *id.* at 315, Congress added a statutory clause defining "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement." Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99–80, § 2(c)(2), 99 Stat. 183, 185 (1985) (codified at 28 U.S.C. § 2412(d)(2)(G)).

Since Congress's adoption of the *McDonald* approach, this court has applied a broad, flexible approach in determining what constitutes the permissible time period for filing an EAJA fee application. *See James v. United States Dep't of Housing and Urban Development*, 783 F.2d 997, 998 (11th Cir.1986). Acknowledging that the thirty-day filing requirement was not designed to serve "as a trap for the unwary," *id.* at 999, this court has recognized that the filing requirement, although jurisdictional, should be interpreted broadly and that overtechnical constructions of the requirement should be avoided. *Id.* at 998–99. Consistent with this approach, we have treated the thirty-day provision in the Act as defining only a nonwaivable deadline for filing a fee petition. Upon expiration of

this period, the district court loses jurisdiction to consider the merits of any fee petitions not timely filed. *See Martindale,* 890 F.2d at 413; *J.H.T., Inc.,* 872 F.2d at 375. We have held, however, that the thirty-day period does not define the interval in which an application for fees *must* be filed; a claimant is permitted to file a petition for fees before a final judgment (as that term is used in the EAJA) has been entered. *See Haitian Refugee Center,* 791 F.2d at 1495–96.

Similarly, this court has adopted a functional approach in determining what constitutes a "final judgment" under the EAJA. *See Martindale,* 890 F.2d at 412 & n. 3. Under this approach, we have construed the Act's definition of "final judgment" as designating "the date on which a party's case has met its final demise," such that there is no longer any possibility that the district court's judgment is open to attack. *James,* 783 F.2d at 997. Application of this functional approach leads to the conclusion that a "final judgment" is, to a great extent, dependent upon the actions taken by the government subsequent to entry of the district court's judgment. For example, in *Martindale v. Sullivan,* 890 F.2d 410 (11th Cir.1989), the government chose not to appeal the district court's judgment. Because the government provided no notice of its intention to forgo an appeal, *see* 28 U.S.C. § 2414, we held that the district court's judgment became final when the time for filing a notice of an appeal expired. 890 F.2d at 413 n. 5. In contrast, in *James v. United States Dep't of Housing and Urban Development,* 783 F.2d 997 (11th Cir.1986), the government chose to appeal the district court's judgment, but later dismissed the appeal. Once the government's appeal had been dismissed, the parties were on clear notice that the district court's judgment was no longer subject to attack. Accordingly, this court held that the date of the government's dismissal marked the point at which the district court's judgment became a "final judgment" under the EAJA. *Id.* at 998–99.

Other courts have agreed that the determination of what constitutes an EAJA "final judgment" commencing the final thirty-day period in which a district court has jurisdiction to consider a fee application should be broadly construed so as not to deprive the unwitting claimant of attorney's fees. In reaching this conclusion, these courts have also noted that, unless the time for filing an appeal has expired, it is frequently difficult for the private party to determine when a district court order or settlement should be considered nonappealable unless the government gives a clear and unequivocal indication that no appeal will be forthcoming. For example, in *Papazian v. Bowen,* 856 F.2d 1455, 1456 (9th Cir.1988) (per curiam), a Social Security case, the plaintiff challenged the Secretary's decision denying disability benefits by filing a complaint in district court. Prior to the district court's resolution of the litigation, the parties agreed that the plaintiff was disabled and that the case should be remanded to the Secretary for further administrative proceedings to determine the amount of the benefit award. The parties filed a stipulation to that effect with the district court, which approved the stipulation and remanded the case. Rather than filing an EAJA fee application within thirty days of the stipulation and remand order, the claimant waited until after the Secretary determined the date on which the claimant had become disabled and set the benefits amount, and the district court approved the Secretary's action and dismissed the lawsuit. The Secretary claimed that this filing was untimely, contending that the stipulation should be treated as a nonappealable settlement.

Rejecting this contention, the Ninth Circuit noted that the parties had stipulated to a remand for "further administrative proceedings" and that the agency's actions during these additional proceedings remained open to potential challenge by the claimant. *Id.* at 1456. Additionally, the court noted that the Secretary had not seasonably provided clear notice to the court or the claimant that it had viewed the litigation as having been resolved. Under such circumstances, the court determined that the purposes of the EAJA would be

defeated by adopting the approach suggested by the Secretary. *Id.*

Similarly, in *City of Brunswick v. United States*, 661 F.Supp. 1431, 1438–39 (S.D. Ga.1987), *rev'd on other grounds*, 849 F.2d 501 (11th Cir.1988), *cert. denied*, 489 U.S. 1053, 109 S.Ct. 1313, 103 L.Ed.2d 582 (1989), the district court eschewed an overly rigid approach and refused to define "final judgment" in an overly technical manner. In *City of Brunswick*, the parties agreed to a stipulated settlement in which they agreed to submit their dispute to an arbitration panel. Both parties agreed to be bound by the decisions of the arbitration panel, and the federal agency agreed that if the arbitration panel made specific recommendations, it would act consistently with those recommendations and that its actions would become effective upon order of the district court. After receiving the arbitration panel's report, however, the federal agency contested various aspects of the panel's recommendations. Ultimately, however, the agency complied with the panel's recommendations, and the district court issued its final order pursuant to the settlement.

According to the government, the district court did not have jurisdiction to consider the plaintiff's petition for attorney's fees because a completed fee application was not filed until more than thirty days after entry of the district court's final order. The district court disagreed. It noted that the federal agency, after hearing the conclusions of the arbitration panel, had filed objections to the arbitrators' conclusions. Although the federal agency withdrew its objection before the district court's order, the district court reasoned that the plaintiff had no clear assurances that the federal agency would not appeal the settlement. Because the settlement potentially was appealable and because the plaintiff had received no indication from the federal agency that it was not going to appeal the settlement order, the court concluded that its final order pursuant to the settlement could not be considered a final, nonappealable judgment for purposes of the

EAJA until the agency's sixty-day period for filing a notice of appeal had expired. *Id.* at 1438.

Certain recurring themes emerge from these cases. Predominant among them is a recognition that the EAJA was enacted to encourage private parties to challenge government conduct that impair constitutional or statutory rights. Realization of this purpose inextricably leads to the view that the EAJA's filing requirement is not be construed in such a manner so as to deny EAJA fees to a prevailing plaintiff through the erection of confusing or misleading procedures and rules. The EAJA is premised upon the basic notion that parties who successfully challenge substantially unjustified government positions are generally entitled to recover the fees incurred in doing so. To create unforeseen obstacles so as to deny fees to those parties who have prevailed in their litigation would defeat the very purpose of the Act. As a result, the courts have recognized that the filing requirement should be interpreted broadly and that overtechnical constructions which could be a trap for the unwary should be avoided.

Our study of the 1985 amendments to the EAJA and the legislative history persuades us that the developing case law has properly captured Congress's intent. When Congress unsuccessfully attempted to reenact the EAJA after its expiration on October 1, 1984,[8] it sought to clarify various aspects of the Act by including a series of definitional provisions. Among these new passages was a clarification that "final judgment" meant "final and not appealable." According to the Senate Judiciary Committee Report accompanying this attempted reenactment, the added language was designed to show Congress's concurrence with the views expressed by the Seventh Circuit in *McDonald v. Schweiker*. According to the Report, the clarifying amendment was adopted for the express purpose of establishing that "[t]he EAJA allows a prevailing party to file a fee petition within 30 days of the final disposition of a case on the merits, i.e. when a party's

8. *See* note 6, *supra.*

*right to appeal* the order has lapsed." *See Taylor v. United States*, 749 F.2d at 174 (emphasis added), quoting Report of Senate Judiciary Committee accompanying S. 919, S.Rep. No. 98–586, 98th Congress, 2d Sess. 16 (1984).

Similarly, the published legislative history of the version of the EAJA subsequently passed by Congress continued to echo *McDonald*'s theme that the EAJA's timely filing requirement was to be interpreted broadly. According to the House Report accompanying the newly reenacted EAJA, Congress emphasized that "this section should not be used as a trap for the unwary resulting in the unwarranted denial of fees," and warned courts to "avoid an overly technical construction" of the timeliness requirement. *See* H.R.Rep. No. 120, 99th Cong., 1st Sess. 18 n. 26, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 146 n. 26. To illustrate Congressional intent, the Committee Report provided the following examples:

> If a settlement is reached and the fee award is not part of the settlement, then the thirty-day period would commence on the date when the proceeding is dismissed pursuant to the settlement or when the adjudicative officer approves the settlement.
>
> Thus, if the Government does not appeal an adverse decision, the thirty-day period would begin to run upon expiration of the time for filing the notice of appeal or a petition for certiorari. The appealable orders include all discretionary appeals and include writs of certiorari. When the government dismisses an appeal, the date of dismissal commences the thirty-day period. In a case remanded by a court of appeals for entry of judgment, the thirty days would commence on expiration of the time for appealing the judgment on remand.
>
> Upon denial of a petition for certiorari, the thirty-day period would begin when the time to seek rehearing expires. For Supreme Court cases heard on the merits, the expiration of the time for seeking rehearing will begin the thirty-day period in any case which is not remanded for entry of judgment. A similar analysis applies in direct appeal cases.

*Id.*[9]

■ Drawing from the foregoing case law and legislative history, we conclude

---

9. Although some question has arisen as to whether judicial reliance upon either of these two reports is appropriate as providing indicia of Congressional intent, *see, e.g., Russell v. National Mediation Bd.*, 764 F.2d at 345 (questioning reliance upon Senate Report accompanying first unsuccessful reenactment attempt); *Premachandra v. Mitts*, 753 F.2d 635, 642 n. 9 (8th Cir.1985) (en banc) (same); *cf. Pierce v. Underwood*, 487 U.S. at 566, 108 S.Ct. at 2551 (disavowing reliance upon House Report accompanying 1985 EAJA reenactment), we find that the reports are proper sources of legislative purpose in addressing the issue before this court. At the time *Russell* and *Premachandra* were published, Congress had not yet succeeded in obtaining presidential approval of the proposed reenactment of the EAJA. Accordingly, these courts questioned the utilization of subsequent legislative history of a bill that did not pass to interpret the meaning of an existing statute. Subsequent actions, however, have rendered these concerns inconsequential. In 1985, Congress succeeded in obtaining presidential approval to reenact the EAJA, and the reenacted EAJA contained the exact clarifying language that had been proposed in Congress's first reenactment attempt. Therefore, to the extent that the Senate Judiciary Committee Report shines light on Congress's motives in including new language to assist courts in determining when an EAJA fee application must be filed, we can find no reason why this Report should not be considered.

Similarly, the Supreme Court's disavowal of the House Report in *Pierce v. Underwood*, 487 U.S. at 566, 108 S.Ct. at 2551, is contextually distinguishable. In *Underwood*, the Court was seeking to determine the proper interpretation of "substantially justified" as that phrase is used in 28 U.S.C. § 2412(d)(1)(A). The phrase "substantially justified" had appeared in the original enactment of the EAJA in 1980 and had remained unchanged when Congress reenacted the EAJA in 1985. In disavowing reliance upon the Report's interpretation of this phrase, the Court noted the Committee's interpretation "is not an explanation of any language that the 1985 Committee drafted, because on its face it accepts the 1980 meaning of the terms as subsisting, and because there is no indication whatever in the text or even in the legislative history of the 1985 reenactment that Congress thought it was doing anything insofar as the present issue is concerned except reenacting and making permanent the 1980 legislation." *Id.*, at 566, 108 S.Ct. at 2551. Given these facts, the Court determined that reliance upon subsequent legislative history would not be proper.

In contrast, the legislative history to which we refer is not *subsequent* legislative history. The

that, in cases in which the Secretary potentially could appeal from a district court's post-remand final judgment, but chooses not to do so, the general rule should be that the thirty-day time limit commences to run when the Secretary's time for taking an appeal from the post-remand judgment expires. An exception to the general rule would exist only when the Secretary provides clear and unequivocal notice that he is waiving his right to appeal the district court's post-remand judgment.[10] *See* 28 U.S.C. § 2414 ("Whenever the Attorney General determines that no appeal shall be taken from a judgment or that no further review will be sought from a decision affirming same, he shall so certify and the judgment shall be deemed final"); *see also Keasler v. United States*, 766 F.2d 1227, 1230 (8th Cir.1985). So long as the government possesses the right to appeal and has not given a clear, unequivocal indication that no appeal will be forthcoming, a claimant for fees may reasonably assume that the government will be mounting a challenge to the district court's post-remand judgment. Once the Secretary gives clear and unequivocal notice that he will not appeal, however, the prevailing party must file the EAJA fee application within thirty days in order to be timely.

## V. APPEALABILITY OF THE DISTRICT COURT'S POST–REMAND ORDERS

The operative inquiry, therefore, in each of the four cases before us is whether the Secretary potentially could have appealed the district court's final order dismissing the litigation when, after a court-ordered remand, the Secretary awarded full benefits to the claimant. If such an appeal could potentially have been brought, then the claimants are correct that the district court's dismissal of the litigation did not

constitute a "final judgment" for EAJA purposes.

### A. *The Pre–Finkelstein Established Law*

Until recently, judicial proceedings dealing with the review of the Secretary's decisions in Social Security cases were governed by the following rules. A claimant dissatisfied with the Secretary's administrative decision could obtain judicial review of that decision by filing a complaint in district court. *See* 42 U.S.C. § 405(g). In that review, the federal courts would review the Secretary's decisions to ensure both that the Secretary abided by the correct legal principles and that there existed substantial evidence to support the Secretary's decision. If the court determined that the Secretary erred in the administrative proceedings, the court could choose one of two options: it could either order the Secretary to award benefits to the claimant or it could remand the case back to the Secretary for further consideration. If the former alternative were chosen, the Secretary could immediately appeal the district court's order, *see Martindale*, 890 F.2d at 412–13; if the district court adopted the latter approach, however, its decision remanding the case was viewed as an interlocutory order, not subject to immediate appeal. *See Taylor v. Heckler*, 778 F.2d at 677.

Assuming that the district court remanded the case to the Secretary for further consideration, it was commonly understood that the district court retained jurisdiction over the matter to review the Secretary's actions after remand. This procedure not only had been mandated by several federal courts including this one, *see, e.g., Taylor*, 778 F.2d at 677 & n. 2; *Guthrie v. Schweiker*, 718 F.2d 104, 106 (4th Cir.1983), but was the accepted view of the Secretary as well. *See Hudson*, 490 U.S. at ——, 109

1985 Congress clearly did more than simply reenact the 1980 statutory language governing when a fee application must be timely filed: it also added statutory language designed to clarify and resolve a conflict developing in the federal courts. Under this circumstance, reliance upon the Committee Report's discussions of the

purpose underlying the newly added language is appropriate.

10. For example, the legislative history indicates that when a settlement is reached, the 30 day period does not commence until the proceeding is dismissed pursuant to the settlement or when the adjudicated officer approves the settlement.

S.Ct. at 2255; *Brown v. Secretary of Health & Human Services,* 747 F.2d 878, 884 (3d Cir.1984). In other words, it was the acknowledged rule in Social Security cases that when a district court vacated the Secretary's final decision and ordered a remand to the Secretary for further proceedings, that order (1) was a nonappealable order (at least in this circuit), (2) did not terminate the district court's jurisdiction over the matter, and (3) was not a final judgment for EAJA purposes. *See Taylor,* 778 F.2d at 677–78.

After conducting additional administrative proceedings, it was commonly accepted that the Secretary would then return to the district court and present its decision along with supporting transcripts and documents to the district court. *Brown,* 747 F.2d at 884; *Guthrie,* 718 F.2d at 106. At that point, the district court would determine whether the Secretary followed its instructions on remand and would then enter judgment affirming, modifying, or reversing the Secretary's decision. *See Hudson,* 109 S.Ct. at 2255; *Brown,* 747 F.2d at 884. It was this order after the proceedings on remand that was the final, appealable decision. Under the 1985 amendments and the subsequent case law, the thirty-day time limit for filing an attorney's fee application under the EAJA commenced when the sixty days for filing an appeal expired.

In all four cases before us, the motion for attorney's fees was filed more than thirty days after the district court's dismissal order following remand, but within ninety days after that order was filed. Thus, all four motions would be timely under the general rule. The Secretary makes three arguments for a different result.

B. *Appealability of the Post–Remand Order when the Secretary Has Granted Full Benefits in the Administrative Proceeding Conducted Pursuant to the Court–Ordered Remand*

First, the Secretary argues that he possessed no grounds to appeal the district court's dismissal order following the remand so that the order was nonappealable and the usual sixty days for appeal was inapplicable. The foundation of this argument is that the Secretary granted full benefits during the proceedings on remand and thus had no grounds to appeal his own decision.[11] The Secretary asserts that "no justiciable issue existed"[12] because the district court affirmed the Secretary's own decision and dismissed the litigation. However, looking at the issue from the claimants' perspective, it is not at all apparent why the Secretary, having defended his initial decision in the district court and having received an adverse interlocutory ruling, might not desire to challenge that adverse ruling after the final judgment following remand. The fact that the Secretary, under the compulsion of the district court's remand order, arrived at a new decision need not change the fact that the Secretary might believe the first remand decision was erroneous. Under general legal principles, earlier interlocutory orders merge into the final judgment, and a party may appeal the latter to assert error in the earlier interlocutory order. *See generally,* 9 J. Moore, B. Ward, J. Lucas, Moore's Federal Practice ¶ 110.07 (2d ed. 1990). Applying that principle here, we find it entirely reasonable for a claimant to believe that the Secretary, having finally obtained an appealable judgment of the district court, might seek to obtain review of the district court's earlier remand order.

---

**11.** This argument was explicitly presented by the Secretary in the district court in two of the cases. *See* Defendant's Memorandum in Support of his Motion to Dismiss and Opposition to Plaintiff's Application for Attorney Fees Pursuant to 28 U.S.C. § 2412(d), *Grimes v. Sullivan,* Civ. No. 82–947–Civ–J–12, at 3–4 (April 3, 1989) ("Obviously, the Secretary had no intention of appealing an order affirming his decision to grant benefits."); Defendant's Memorandum in

Support of his Motion to Dismiss and Opposition to Plaintiff's Application for Attorney Fees Pursuant to 28 U.S.C. § 2412(d), *Myers v. Sullivan,* Civ. No. 87–755–Civ–J–12, at 3 (March 13, 1989) ("It is obvious the Secretary had no intention of appealing an order affirming his decision to grant benefits.").

**12.** Brief of Appellee, at 4.

*See* 42 U.S.C. § 405(g) ("the judgment of the district court shall be final except that is shall be subject to review in the same manner as a judgment in other civil actions.").

We note that there is conflicting dicta in several cases as to whether the Secretary can obtain judicial review of an earlier interlocutory remand order. We have located at least two circuit court opinions, including one from our predecessor circuit, that suggest that such review could be obtained once the district court dismissed the litigation. *See Harper v. Bowen*, 854 F.2d 678, 681 (4th Cir.1988) (intimating that the Secretary could obtain review after the district court entered a final judgment in the case); *Barfield v. Weinberger*, 485 F.2d 696, 698 (5th Cir.1973) (per curiam) (rejecting Secretary's argument that Secretary's right to review district court's remand order "will probably be irreparably lost" unless interlocutory review is granted).[13] On the other hand, we are aware that, in at least two other opinions from this circuit's predecessor, panels have suggested that the Secretary would not be able to challenge an earlier remand decision if forced to wait until after the litigation has concluded. *See Gold v. Weinberger*, 473 F.2d 1376, 1378 (5th Cir.1973) (using this justification to allow interlocutory appeal of district court's remand order); *Cohen v. Perales*, 412 F.2d 44 (5th Cir.1969), *rev'd on other grounds sub nom., Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (same).

The power of the suggestions made in these latter two cases, however, was called into question in light of this court's later observations in *Taylor v. Heckler*, 778 F.2d 674 (11th Cir.1985). In both *Gold* and *Co-*

hen, this court's predecessor, expressing concerns that subsequent events might potentially insulate the district court's remand order, permitted the Secretary to file an immediate appeal from district court remand orders. However, in *Taylor*, this court appeared to repudiate the holdings of these two cases when it stated that "[t]his circuit treats *all* remand orders to the Secretary as interlocutory orders, not as final judgments," 778 F.2d at 677 (emphasis in original), thereby appearing to endorse the observations in *Barfield v. Weinberger*, 485 F.2d at 698, that interlocutory review of a remand order was unnecessary because review of all issues could be obtained once the matter was ultimately resolved.[14]

Given the foregoing state of the case law, the best that can be said of the Secretary's position is that there was some doubt as to whether the Secretary could appeal the final post-remand judgment to assert error in the earlier interlocutory order. Under these circumstances, we conclude that the thirty days should not commence until the usual sixty days for appeal expires. A contrary ruling would contravene the clear Congressional intent that the thirty-day deadline not be construed in an overtechnical manner and the clear Congressional intent that the deadline not be a trap for the unwary. Thus, we reject the Secretary's first argument.

### C. Appealability of the Post–Remand Order If It Were Pursuant to Settlement

The Secretary's second argument is that three of the cases were, in effect, settled and that the post-remand judgments dismissing those cases were, in effect, dis-

---

**13.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

**14.** The *Gold* and *Cohen* concerns appear to be based upon the fact that under § 405(g) only the claimant can seek review in the district court of the Secretary's decision. Of course, this rationale would not preclude the Secretary from returning to district court after remand under the established practice that the proceedings on remand are pursuant to the retained jurisdiction

of the district court and the Secretary's modified findings on remand are to be filed in the district court. Moreover, even if the Secretary could not initiate the return to district court under § 405(g)—contrary to the established practice—that fact would not affect the Secretary's right to appeal from the district court's final post-remand order (to assert error in the earlier interlocutory order) if the claimant were again to utilize § 405(g) to return to district court to challenge anew the Secretary's post-remand decision.

missals pursuant to settlement. Of course, if the judgment was entered pursuant to a settlement, it would not be appealable, and the thirty days would commence immediately. We discuss the Secretary's settlement argument with respect to the Myers case in Part VI. The Secretary also makes the settlement argument with respect to Parker and Cohen. In both cases, after the Secretary had granted full benefits during the remand proceedings, the Secretary moved in the district court for an order affirming the Secretary's decision and dismissing the case. The Secretary argues that this gave notice to Parker and Cohen that the Secretary was, in effect, settling the litigation.

We reject the Secretary's argument. Neither the fact that the Secretary awarded full benefits during the remand proceedings nor the fact that the Secretary filed the post-remand motion in the district court can obscure the fact that the full benefits were awarded only because the district court had rejected the Secretary's defense of the initial determination, vacated the Secretary's original decision and remanded the case for further proceedings. Although the Secretary later sought a final judgment from the district court, only the Secretary knew whether the final judgment was being obtained in order to settle the

case, or on the other hand, in order to precipitate the entry of a final judgment from which the Secretary could appeal to assert error in the earlier, interlocutory remand order. We readily conclude that the Secretary's actions in the Parker case and the Cohen case fall far short of providing the claimants with clear and unequivocal notice that the Secretary intended to settle the cases and waive its right to appeal the final post-remand judgment of the district court. Absent such clear and unequivocal notice, the Secretary retained the potential to file an appeal from the post-remand judgment until the time for filing the appeal expired. Only then was the judgment final and nonappealable under EAJA.

### D. *Appealability of the Post–Remand Orders In Light of Finkelstein*

■ The Secretary's third argument for a different result is that the settled law described above was inextricably altered by *Sullivan v. Finkelstein,* —— U.S. ——, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). In *Finkelstein,* the Supreme Court held that certain district court remand orders are immediately appealable. The Court observed that 42 U.S.C. § 405(g) provides for two distinct forms of district court action in reviewing decisions of the Secretary.[15] Un-

**15.** 42 U.S.C. § 405(g) provides the statutory authority for a claimant dissatisfied with the Secretary's final decision during an administrative hearing to obtain federal court review of the Secretary's actions. In its entirety, the statute provides:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

der the sixth sentence of § 405(g), the district court may

> on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

Should the district court enter a remand order pursuant to this sixth sentence, the district court retains jurisdiction over the entire proceedings and will review the Secretary's subsequent actions.[16] The clear implication is that a sixth sentence remand order is not immediately appealable. *Finkelstein,* —— U.S. at —— n. 8, 110 S.Ct. at 2665 n. 8.

In contrast to a nonappealable sentence six remand, the Supreme Court held that the sentence four remand in *Finkelstein* was immediately appealable. Sentence four of § 405(g) grants the district court general authority to affirm, modify or reverse a decision of the Secretary with or without a remand:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

In *Finkelstein,* the district court implicitly invalidated the Secretary's regulation which treated the spouse of a wage earner less favorably than the wage earner, and remanded the case to the Secretary for a determination of benefits without consideration of the regulation held to be invalid. The Secretary appealed to the Third Circuit. That court dismissed the appeal for lack of jurisdiction relying upon its established law that such remand orders were interlocutory. The Supreme Court granted certiorari to determine whether the Secretary "may immediately appeal a district court order effectively declaring invalid regulations that limit the kinds of inquiries that must be made to determine whether a person is entitled to disability insurance benefits and remanding a claim for benefits to the Secretary for consideration without those restrictions." *Finkelstein,* —— U.S. at ——, 110 S.Ct. at 2661. Reversing the decision of the Third Circuit, the Supreme Court held that the district court's order entered pursuant to sentence four of § 405(g) was immediately reviewable, notwithstanding the fact that the district court remanded the case to the Secretary.

The Secretary interprets *Finkelstein* to mean that *any and every* order by a district court remanding a Social Security case pursuant to sentence four of § 405(g) is a final order which is immediately reviewable.[17] The Secretary argues that three of the four cases before us (*Parker, Grimes,* and *Cohen*) involved remand orders that

and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.

---

16. *Hudson,* 490 U.S. at ——, 109 S.Ct. at 2255; *see* 42 U.S.C. § 405(g) ("the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.").

17. Although the Court's analysis provides some support for this reading, the opinion also purported to limit the ruling narrowly to the question before the Court—i.e., "whether orders of the type entered by the district court in this case are immediately appealable by the Secretary." *Id.* —— U.S. at —— & n. 3, 110 S.Ct. at 2663 & n. 3.

were, at least in part, sentence four remands. *Finkelstein* makes clear, the Secretary posits, that the Secretary could have appealed those remand orders. Because those remand orders were not then appealed, the Secretary argues that any claim that the Secretary may have had that those remand orders were erroneous was waived. Since the Secretary granted full relief on remand, the only possible basis for appealing the post-remand order was potential error in the earlier interlocutory remand order; this having been waived, the Secretary argues that the post-remand order was nonappealable, and thus the thirty-day time limit commenced immediately upon entry by the district court of the post-remand order.

For purposes of the cases before us, we can assume arguendo the Secretary's interpretation of *Finkelstein* and assume that under *Finkelstein* the Secretary could have immediately appealed the district court's remand order in *Parker, Grimes* and *Cohen,* and could not have appealed from the district court's final order following the remand. Because we conclude that *Finkelstein* should not be applied retroactively to the cases before us, we need not decide upon its proper interpretation.[18]

The general rule is that decisions are applied retroactively. However, in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court set out the test for determining when a judicial decision should not be applied retroactively in civil litigation:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have

relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker, supra,* 381 U.S. [618] at 629, 85 S.Ct. [1731] at 1738 [14 L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma, supra,* 395 U.S. [701] at 706, 89 S.Ct. [1897] at 1900 [23 L.Ed.2d 647 (1969)].

404 U.S. at 106–07, 92 S.Ct. at 355. *See also Ackinclose v. Palm Beach County, Fla.,* 845 F.2d 931 (11th Cir.1988). Applying the first factor, we readily conclude that the *Finkelstein* interpretation urged upon us by the Secretary would constitute at least a decision of "first impression whose resolution was not clearly foreshadowed." As our discussion in Section V.A, *supra* 672–73 indicates, the law prior to *Finkelstein* was well established, both in this circuit and others, that remand orders of the kind now before us were interlocutory and were not immediately appealable. Not only was this the established law in several courts of appeal, but it was also the accepted view of the Secretary. *See Sullivan v. Hudson,* 490 U.S. at ——, 109 S.Ct. at 2255 ("The Secretary concedes that a remand order from the district court to the

---

**18.** There are several questionable aspects of the Secretary's interpretation of *Finkelstein.* For example, in *Grimes* and *Cohen,* each claimant's § 405(g) suit challenged the Secretary's decision on several grounds, and each district court remand order was based not only upon sentence four of § 405(g), but also upon sentence six. Because of our ruling on retroactivity, we need not decide whether the proper interpretation of *Finkelstein* would mean that the sentence four remand orders in those cases were immediately appealable notwithstanding the coexistence of the sentence six remand orders. Cf. Fed.R.Civ.P. 54(b).

Similarly, cases will arise in which a district court rejects some of a claimant's challenges to the Secretary's decision, but remands for further consideration of other challenges made by the claimant. The claimant may desire an immediate appeal seeking broader relief than the district court granted. The Supreme Court in *Finkelstein* expressly reserved decision on the appealability of such an order, although it would seem to be a sentence four order. —— U.S. at —— n. 3, 110 S.Ct. at 2663 n. 3.

agency is not a final determination of the civil action and that the district court retains jurisdiction to review any determination rendered on remand.") (quotation omitted). The *Finkelstein* interpretation urged upon us by the Secretary was certainly not "clearly foreshadowed"; rather, the contrary result was foreshadowed in *Sullivan v. Hudson,* which contained strong dicta that a sentence four remand was not a final judgment, citing with apparent approval the opinions of the several courts of appeal to that effect. 490 U.S. at ——, 109 S.Ct. at 2255 ("As in this case, there will often be no final judgment in claimant's civil action for judicial review until the administrative proceedings on remand are complete.").

In applying the second *Chevron* factor, we look to the purpose and effect of the underlying substantive statute to determine whether retroactive operation of the new rule would further or retard its purpose. *See Ackinclose,* 845 F.2d at 934. It is clear that the purpose of the EAJA would be retarded by retroactive application. Congress intended that the thirty-day deadline for seeking attorney's fees be interpreted broadly and that courts should avoid overtechnical constructions which would be a trap for the unwary. Social Security claimants have reasonably relied upon well-established law prior to *Finkelstein.* Under that settled law, remand orders of the type now before us were interlocutory in nature and not immediately appealable. Only after the remand proceedings when the district court entered its order affirming the Secretary's decision on remand could a final judgment be obtained, and the thirty-day time limit began to run when the time for appealing that district court order expired. Retroactive application of the Secretary's interpretation of *Finkelstein* would clearly be a trap for the unwary and thus would violate the express intent of Congress.

The final *Chevron* component also counsels nonretroactivity. We have already noted that the reliance of Social Security claimants on the pre-*Finkelstein* law was reasonable. *See Ackinclose,* 845 F.2d at 935. Retroactive application to defeat that reasonable reliance would clearly produce substantially inequitable results. Moreover, retroactive application would also be inequitable from the Secretary's perspective. If the remand order were deemed to be immediately appealable and the Secretary's failure to appeal constitutes a waiver, the Secretary might very likely have relied upon established law in failing to appeal an adverse remand order immediately, and then be trapped when retroactive application of *Finkelstein* rendered the final order after remand nonappealable.

Applying the *Chevron* factors, we readily conclude that the Secretary's interpretation of *Finkelstein* should not be retroactively applied to the cases before us. *See Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 2025–26, 95 L.Ed.2d 582 (1987). Under then prevailing law, the remand orders in the cases before us were interlocutory, nonappealable orders.[19] The interlocutory remand order would merge under general rules into the final post-remand judgment, and the Secretary could potentially appeal the final post-remand judgment to assert error in the earlier interlocutory order.

## VI. DECIDING THE FOUR CASES

Our conclusion that the district court's order dismissing the litigation remained potentially subject to appeal by the Secretary to challenge the earlier, adverse remand order is sufficient to dispose of the issues in *Parker, Grimes,* and *Cohen.* In each of these three cases, the magistrate's recommendation as adopted by the district court contained one or more rulings adverse to the litigating position of the Secretary. Because the law in this circuit prohibited the Secretary from immediately appealing those remand orders, it remained unclear whether the Secretary would seek appellate

---

**19.** We have referred in the text only to the remand orders in *Parker, Grimes* and *Cohen,* in which remand orders were issued at least in part pursuant to the authority of sentence four of § 405(g). In *Myers,* the remand order was exclusively pursuant to sentence six, and thus was clearly an interlocutory, nonappealable order.

review of those orders once a final decision had been issued by the district court. Given that the Secretary gave no clear indication that he would not file appeals, the district court's dismissal orders remained potentially subject to appeal until the time for filing an appeal expired—sixty days after the district court's orders were filed. At that point, the district court's orders became final under the EAJA, and the claimants had an additional thirty days in which to file their applications for attorney's fees. Parker, Grimes, and Cohen each filed their petitions for fees within this remaining thirty-day period. Consequently, the fee petitions were timely filed.

■ Because the *Myers* remand order stands in a different posture from the remand orders in *Parker, Grimes,* and *Cohen,* it must be addressed separately. In contrast to the contested remand orders in the latter three cases, the Secretary in *Myers* concurred with Myers's motion for a remand. Additionally, the Secretary admitted error and represented to the court that he would award Myers the full amount of disability benefits requested on remand.

At no point in the proceedings before the district court did the court issue a ruling adverse to the Secretary. As a result, the Secretary possessed no grounds for filing an appeal of any district court order. The Secretary clearly conceded that his earlier decision denying benefits was erroneous and that he intended to award Myers full benefits. On remand, the Secretary remained true to his word.

Thus, at the time the district court entered its post-remand final judgment dismissing the litigation, Myers had full knowledge that the Secretary's decision to award full benefits was wholly volitional and was not reached in an attempt to comply with an adverse order of the district court. Without any compulsion or coercion from the district court, the Secretary fully acquiesced in Myers's claim that she was entitled to receive benefits from May 2, 1986.

For all practical purposes, therefore, the situation in this case is functionally analogous to the situation in which the parties reach a settlement on all issues. The legislative history of the EAJA indicates that the thirty-day time period commences when a case is dismissed pursuant to a settlement agreement. When the district court dismissed Myers's case following the remand proceedings, this was the equivalent of a dismissal pursuant to a settlement agreement. Our holding in *Myers* easily falls within the exception to the general rule that the thirty-day time period will commence when the sixty-day time for appeal expires. We conclude that the government provided "clear and unequivocal notice" to Myers that it would not appeal. Under these special circumstances, Myers had ample knowledge that the Secretary could not and would not be appealing. As a result, we conclude that Myers's application for fees, filed more than thirty days after the district court's final order dismissing the case, was untimely. *Cf. Dunn v. United States,* 775 F.2d 99, 105 (3d Cir. 1985) (filing of uncontested consent judgment was final, nonappealable under the EAJA when no party opposed or was aggrieved by the judgment; hence, neither side could appeal it); *contra LaManna v. Secretary of Health and Human Services,* 651 F.Supp. 373 (N.D.N.Y.1987).

In sum, we conclude that the fee petitions filed by Parker, Grimes, and Cohen were timely filed and that the district court had jurisdiction to consider the merits of the petitions. Accordingly, we REVERSE the contrary judgments of the district court in these three cases. Because we conclude that the application for attorney's fees filed by Myers, however, was not within the EAJA's time constraints, we AFFIRM the district court's judgment denying her application for fees.[20]

---

20. As a final postscript, we note that in future cases to which *Finkelstein* is applicable, the various possible interpretations of *Finkelstein,* see note 18 *supra,* may create uncertainty. To be safe, a claimant might be well-advised to file any motion for EAJA attorney's fees within 30 days of a district court's final, post-remand judgment. In fact, the Secretary has taken the position in some courts that the Secretary's post-remand administrative decision awarding full

**680**

REVERSED in part, and AFFIRMED in part.

benefits should be treated as the "final judgment" that commences the 30–day period. *See Melkonyan v. Heckler,* 895 F.2d 556 (9th Cir. 1990). While that position would seem to be contrary to *Sullivan v. Hudson,* 490 U.S. at ——, 109 S.Ct. at 2255, claimants may want to be safe and file any motion for EAJA attorney's fees within 30 days of the Secretary's final decision after remand. Even a premature motion is considered timely. *James,* 783 F.2d at 998–99; *Haitian Refugee Center,* 791 F.2d at 1495. Should the claimant need to amend that petition later to reflect additional time expenditures, such time would be recoverable. *Pollgreen v. Morris,* 911 F.2d 527, 536 n. 13 (11th Cir.1990).